GALVESTON, H. & S. A. RY. CO. v. SAMPLE.†

(Court of Civil Appeals of Texas. San Antonio. March 13, 1912. Rehearing Denied April 10, 1912.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT — NEGLIGENCE — QUESTION FOR JURY.

In an action for injuries to a fireman on a switch engine in railroad yards in a collision with a train, evidence *held* to support a finding of actionable negligence of the switch foreman in failing to send out a flagman to protect the switch engine.

[Ed. Note.—For.other ·cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

2. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.

It is not error to refuse a charge embodied in requested charges given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. TRIAL (§ 244*) — INSTRUCTIONS — UNDUE PROMINENCE TO ISSUES.

A court is not required to give all the charges requested where to do so would give undue emphasis to particular issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

4. MASTER AND SERVANT (§ 291*)—INJURY TO SERVANT—ISSUES.

Where, in an action for injuries to a fireman on a switch engine in railroad yards in a collision with a train, the undisputed evidence showed that the switch engine was moved into a bank of fog which obscured the view ahead at the time of the collision, the refusal to submit the issue whether the switch foreman in charge of the movements of the engine could have anticipated the condition was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1147; Dec. Dig. § 291.*]

5. EVIDENCE (§ 539½*)—OPINION EVIDENCE —COMPETENCY OF WITNESS.

A person who has had practical experience in the handling of trains, and thereby qualified to determine what ought to be done by railroad employés in performance of specified duties, is competent to testify that it is the duty of a switch train foreman to send out a flagman to .protect a switch engine on the main track from a train approaching on the main track.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2350–2352; Dec. Dig. § 539½.*]

6. MASTER AND SERVANT (§ 216*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A fireman on a switch engine in railroad yards subject to the orders of the switch foreman does not assume the risk of injury in a collision between the engine on the main track and a train running on the main track due to the negligence of the foreman to send a flagman to protect the engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. § 216.*]·

7. MASTER AND SERVANT (§ 291*)—INJURY TO SERVANT—EVIDENCE—INSTRUCTIONS.

Where, in an action for injuries to a fireman on a switch engine in railroad yards in a collision with a train, the undisputed evidence showed that a fog excluded the view of the main track and the accident occurred in a bank of fog, the refusal to submit the issue of contributory negligence based on the failure to maintain a lookout was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1147; Dec. Dig. § 291.*]

8. MASTER AND SERVANT (§ 228*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a fireman on a switch engine in railroad yards in a collision with a train occurring after the adoption of the statute of 1909, an instruction making contributory negligence a complete defense is properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

145 S.W.—67　　　† Writ of error denied by Supreme Court.

0

**9. TRIAL (§ 296*)—INSTRUCTIONS—CONSTRUING TOGETHER.**

Where, in an action for an employé's personal injuries, the court charged that, if the employé was guilty of contributory negligence, his damages must be diminished in proportion to the amount of negligence attributable to him, an instruction authorizing the jury to award plaintiff such damages as would fairly compensate him for the injuries was not objectionable as authorizing the jury to award full compensation, though plaintiff was guilty of contributory negligence, but the two instructions, when considered together, properly limited the measure of damages.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705-713, 715, 716, 718; Dec. Dig. § 296.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Grover C. Sample against the Galveston, Houston & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, Howard Templeton and W. F. Ezell, both of San Antonio, for appellant. Perry J. Lewis and H. C. Carter, both of San Antonio, for appellee.

JAMES, C. J. This action was for damages for personal injury to appellee, a fireman on defendant's switch engine in the yards at Glidden, Tex., on or about March 5, 1910. The petition alleged two forms of negligence, in substance, as follows: (1) That defendant's employés in charge of the operation of the engine and cars, which were eastward bound, with the engine in reverse action, and on defendant's main line, negligently failed to keep a proper lookout for signals indicating that another train was on the main track, and negligently failed to send out a flagman to protect said switch engine and cars, and negligently failed to take any precautions or to keep any lookout whatever; but propelled same at a dangerous and negligent speed without precautions taken to ascertain the approach of another train on the track, by reason of which the same was brought into a violent collision with another of defendant's locomotives coming from the east, whereby plaintiff was injured. (2) That defendant's employés of said other train negligently failed to keep a lookout to see if there was any obstruction ahead on the track; negligently failed to keep any lookout, or to have said locomotive under control or to take any precautions whatever in approaching the point where the collision occurred, but, in disregard of all care and precaution necessary under the circumstances, the locomotive was propelled at a dangerous and rapid speed, causing the collision and plaintiff's injury. That plaintiff had nothing to do with the operation of the switch engine except to perform his duties as fireman. The answer was a general demur-

rer, general denial, assumed risk, and contributory negligence. The verdict for plaintiff was $19,000. The court submitted the case to the jury on the first form of negligence only, charging them, in substance, that if it was the duty of the one in charge and control of the switch engine to have protected it by having out a flagman while it was upon the main line and that he failed to have said flagman out, and that such failure was negligence which was the proximate cause of plaintiff's injury, and that plaintiff was not guilty of contributory negligence and did not assume the risk, to find for plaintiff. There were special instructions asked by defendant, refused, and given, which will be elsewhere noticed. The testimony upon which the case went to the jury (except that relating to the character and extent of the injury) consisted of that of plaintiff and his witness, J. A. Johnston, who was running the engine which ran into the switch engine, and who showed himself fully qualified to testify concerning the proper operation of engines and switch trains.

Plaintiff testified to the following facts: That the switch engines drew out a string of about 40 cars upon the main track for the purpose of setting them on the side tracks to break up the train. They moved upon the main track at the east lead switch. The engine drawing these 40 cars was reversed; that is, the tender was in front of the engine which was running backward towards the east. "We backed up, heading in on the west main line onto this train of cars, and then started to backing east pulling this string of cars, and it was while we were doing this work that this accident happened. The engine had got something in the neighborhood of half the distance (about 2,400 feet) between the east lead switch and the caution board at the time of the collision. We were pulling up on that line for the purpose of pulling the rear end of the string of cars over by the east lead switch, so that we could back it into the side tracks and break up that string of cars. * * * I suppose the distance (of the place of the accident) would put the string of cars somewhere near the east lead switch, that is, the rear end would not be very far from the east lead switch. I don't know just how far. * * * I estimate the distance to be 2,400 feet from the caution board to the east switch. That caution board was fixed so that whenever the east lead switch was thrown or any engine or train went on the main line east of the east lead switch it would set the board at caution." It appears that the engine and string of 40 cars were thus upon the main track and the engine was about half way between the lead switch and the caution board which was 2,400 feet off, which was set for caution, and that fact was observed by the engineer of the approaching

train as he passed it. This showed him, as was testified, either that the main line switch was lined up for the lead track, or that a train was on the main line. This engineer testified, further, as to his duty under the circumstances, as follows: "My duty was to approach the station with train under control prepared to stop, and I would have proceeded to the main line switch and called for signal before entering the yard. I had not gotten to this main line switch before this collision occurred. I was about 1,500 feet on the main line. The foreman of the switch engine was in charge of the switch train. The foreman directs its movements. I know the duty of the switch train and switch crew when occupying the place it did when coming into collision with my engine. I do not know of any written rules on the subject. It's a regulation. * * * The foreman of that switch engine was in charge of the switch engine, and switch crew and he protects his engine. Before he went out on the main line, he should have sent a switchman out with a flag to protect that train." The same witness testified that it was a foggy morning, and he could not see whether the switch was lined up for the lead track, or whether there was a train on the main line; that at the place where the wreck occured there was a heavy bank of fog collected, running across the track. "Before and after that bank of fog you could have seen the engine in time to have stopped."

Plaintiff testified: It was a very foggy morning; also, that he was engaged as fireman in putting in coal when the collision took place. He was acting under the orders of the engineer, and had nothing to do with the operation of the train except to fire the engine and keep it hot. That he did not know any train was coming, and the first notice he had of it was the collision. It appears that no flagman was sent out. The engineer, Johnston, also testified: "The track along there is practically straight and level. * * * Before and after that bank of fog, you could have seen the engine in time to have stopped. * * * I approached Glidden with my train under control, and caught a very dense fog. The fog lay in streaks. At times you could see 6 or 8 car lengths. At the milepost at Glidden I could see 6 or 8 car lengths. But where this wreck occurred there was a branch, and I don't believe a man could see over 30 feet right there at that point. * * * At the place where the wreck occurred was a sort of branch, and a heavy bank of fog collected upon that, running across the track north and south."

As the case of defendant's liability was submitted upon the sole question of negligence of the foreman in charge of the switch train, we shall confine our consideration of this case to that form of negligence.

[1] It is contended by the first assignment of error that the evidence was insufficient to authorize a finding that the switch foreman was negligent in failing to send out a flagman or that such negligence was the cause of the accident. The second contends that the signal board, being set at caution, was notice to the engineer of the approaching train, who observed it, that the main line was obstructed by another engine or train, and that it was unnecessary for a flagman to be sent out from the switch train, that the switch foreman, therefore, cannot be adjudged guilty of negligence in having failed to do so, and it was error to submit the case on such issue. The third assignment is in substance and effect the same. We are of opinion that the evidence was sufficient to disclose negligence of the switch foreman in that respect, and that such negligence proximately led to the collision. It is true the evidence indicated that the track was straight, and could, therefore, ordinarily be observed for the whole distance to the caution board. But it was a very foggy morning, and there was a bank of fog in the way which obscured the view of the main track by the incoming engineer, and also the view of the main track from the switch engine. It is true the engineer of the incoming train testified that he saw the board set at caution, and that, in view of this, it was his duty to proceed with caution, and there is nothing to indicate he did not do so. He proceeded thus according to his testimony into the bank of fog, where the switch engine was, and, neither party being able to see the other, and both moving, the collision came. If the failure of the switch engine foreman to send out a flagman was what an ordinarily prudent person would have done under the existing conditions, there was no error in submitting the case as was done. It was shown that an incoming train was something that might have been expected at any time, and whether or not it was the act of a prudent person to move this switch train along the main track as this one was into a bank of fog, without some extra precaution, when collision with a train might be expected any moment, though moving cautiously in obedience to a signal board, was a matter for the jury. And in this connection the engineer upon the incoming train testified to a fact based upon the circumstances of this case and his experience in handling engines including switch engines, to wit: That, before this switch train foreman went out on the main line, he should have sent a switchman out with a flag to protect that train, which was not a rule, but a regulation. The statement of fact discloses that defendant had in attendance on the trial the switch engineer, the yardmaster, and various other employés, including all the switch crew, yet none of them was used to contradict the testimony of Johnston. The said assignments are overruled.

This conclusion requires us to overrule the fourth and fifth assignments also.

[2] The sixth assignment complains of the

refusal of a charge on the subject of the switch foreman's negligence, which, if correct, the court was not in error in refusing, for the reason that it was one of three charges upon the same subject-matter and practically to the same effect, and the other two were given. Railway v. Crosson, 39 Tex. Civ. App. 369, 87 S. W. 867; Railway v. Haney, 94 S. W. 386; Railway v. Hagan, 42 Tex. Civ. App. 133, 93 S. W. 1014.

[3] The court was not required to give them all, and thus emphasize the issue.

[4] The seventh assignment complains of the refusal of the following charge: "If you find that the light engine coming from the east ran into a bank of fog that was so heavy as to obscure the vision of the two engine crews, and the engines collided therein, and were caused to do so by reason thereof, and if you further find that Foreman Jones, of the switch crew, did not know, and could not reasonably have anticipated, that there would be such a bank of fog across the track at the point where the accident occurred, and that the engines might meet therein, then he would not be guilty of negligence, and you should return a verdict for the defendant." As the undisputed testimony showed that the switch engine was moved into a bank of fog which obscured the view ahead, it was not error to refuse to submit whether or not the person in charge of its movements could have anticipated a condition that was before him.

[5] Under assignments from 8 to 12, inclusive, the point is urged that the testimony of witness Johnston that it was the duty of the switch train foreman to send out a flagman was an opinion, and not the subject of expert testimony. The objection to his testimony was (1) that it was not a matter he was qualified to testify about; (2) that it was not the subject of expert testimony because involving the opinion of the witness about a mixed question of law and fact; and (3) that as a hypothetical case the question did not embrace the facts of the case. This witness had already testified fully to the facts and circumstances of this transaction, including the foggy conditions. His answer naturally must be taken as given in reference to the conditions shown by his testimony. There was no occasion for restating them in a hypothetical question. The statement made by him and now brought into question as proper testimony was as follows: "The foreman of that switch engine was in charge of the switch engine and switch crew, and he protects his engine. Before he went out on the main line, he should have sent a switchman out to protect that train." The evidence showed Johnston to have had practical experience in the handling of trains, which qualified him to testify to what was proper to be done by employés in performing train duties in given circumstances. The following cases and others sustain the admissibility of the testimony

given by Johnston: Railway v. Baker, 58 S. W. 966; Railway v. Smith, 90 S. W. 929; Railway v. Grenig, 142 S. W. 135; Railway v. Thompson, 75 Tex. 501, 12 S. W. 742; Railway v. Bohan, 47 S. W. 1050; Railway v. Martinez, 57 S. W. 689; Railway v. Boyd, 56 Tex. Civ. App. 282, 119 S. W. 1154.

[6] The thirteenth assignment is overruled. We find as a conclusion of fact from the evidence, in view of the verdict, that plaintiff did not assume the risk.

[7] The fourteenth assignment complains of the refusal of this charge: "If you find that, when the switch engine moved east down the main line, plaintiff knew that some engine or train was liable to come in from the east at any time, and that, instead of keeping a lookout for some such engine or train, he went between the tender and firebox, where he could not keep a lookout for an approaching engine or train, and was engaged in putting coal in the firebox, and that a man of ordinary prudence, in view of the fact that Engineer Alley was or might be keeping a lookout for signals from the switch crew in the other direction, and of all the existing conditions and surrounding circumstances, would not have been engaged in putting in coal at the time of the accident, but would have been keeping a lookout for an approaching engine or train, and that his failure to keep such lookout was the cause of the accident, then he is not entitled to recover, and you should return a verdict for the defendant." This was properly refused. The undisputed evidence was that the fog excluded the view of the main track and the accident occurred in a bank of fog. A lookout under these circumstances would have been of no use, and there was no error in not submitting contributory negligence with reference to a lookout.

[8] In addition to this, the charge would have made contributory negligence a complete defense, and this accident occurred after the statute of 1909. Besides in view of a charge, No. 13, given at defendant's request, the refusal of the one in question was not error.

The fifteenth complains of the refusal of this charge: "If you find that, when the switch engine was moving down the main line, plaintiff knew that some engine or train was liable to come in from the east at any time, and went in between the tender and firebox, and was engaged in putting coal into the firebox at the time of the accident, and that a man of ordinary prudence, with the knowledge plaintiff had of the danger of the switch engine encountering some engine or train coming in from the east, and of the danger of occupying such position as plaintiff was occupying at the time, and of all the existing conditions and surrounding circumstances, would not have occupied such position, and the act of plaintiff in occupying such position contributed to cause the injuries sustained by him, then plaintiff would be

guilty of negligence, and, in the event you should find for the plaintiff, you should diminish his damages in proportion to the negligence attributable to him." In view of charges on the subject given at appellant's request, this assignment is overruled.

[9] The sixteenth and seventeenth complain of the giving of this charge: "If you find for the plaintiff, and believe from the evidence that he sustained any of the injuries alleged in his petition, then you will award him such damages as you believe from the evidence will fairly compensate him for such injuries, if any, as you may believe from the evidence he has sustained, and are alleged in his petition, and in estimating the damages you award the plaintiff, if any, you may take into consideration the mental and physical pain, if any, suffered by him, consequent upon said injuries, if any, and if you believe from the evidence that said injuries, if any, are permanent, and will impair his capacity to labor and earn money in the future, then you may award him such sum as you believe from the evidence will fairly compensate him for such impaired capacity, if any, to labor and earn money in the future." The criticism of this charge is that it authorized the jury to award plaintiff compensation for his injury sustained, when, if he was guilty of contributory negligence, the amount of damages should have been diminished, and the said charge was in conflict with other instructions in this respect, and was calculated to mislead the jury. It is evident that the jury, in order to have a basis for diminishing the damages proportionate to the contributory negligence, should first ascertain the entire damages.

By other requested charges given, the thirteenth and fifteenth, the jury were instructed, if they found plaintiff guilty of contributory negligence, to diminish his damages in proportion to the amount of negligence attributable to him. The jury could not, if they read the charges given them, have been misled as claimed; nor was there any conflict when these charges are read together and considered.

There is no reason, under the evidence, for us to hold the verdict excessive.

Affirmed.