## GULF, C. & S. F. RY. CO. v. CROW.
### (No. 2256.)

(Court of Civil Appeals of Texas. Texarkana. April 8, 1920. Rehearing Denied April 15, 1920.)

1. **Master and servant ⬤⟶278(4)—Customary accumulation of oil on tank of locomotives held not shown.**

In an action for injuries to a locomotive fireman by slipping on the oil tank of the locomotive, a finding that it was not "usual and customary" for oil and grease to be on such engines *held* sustained by the evidence.

2. **Master and servant ⬤⟶278(6)—Finding of negligence in permitting grease on locomotive oil tank held warranted.**

In an action by a locomotive fireman for injuries from slipping on grease on the oil tank, evidence *held* sufficient to sustain a finding of negligence on the part of the railroad.

3. **Trial ⬤⟶260(1)—Refusal to give one of two instructions unconditionally requested on one issue proper.**

Court having given one of two special charges unconditionally requested on one issue, no complaint can be made because it refused to give the other one.

4. **Damages ⬤⟶132(6)—$18,000 not excessive for oblique fracture of thigh bone of railroad engineer.**

A verdict for $18,000 to a railroad engineer cannot be held excessive, where he was 32 years of age and the injury consisted of an oblique fracture of the thigh bone resulting in the shortening of the leg.

Error from District Court, Burleson County; R. J. Alexander, Judge.

Action by E. M. Crow against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

In May, 1917, plaintiff in error was a common carrier engaged in interstate commerce, and defendant in error was employed by it as a locomotive fireman in such commerce. On the 30th day of said month defendant in error, in discharging his duty as such fireman, fell from the oil tank of the locomotive on which he worked and thereby was seriously, and the jury had a right to say from testimony before them permanently, injured in his person. He claimed that the injury he suffered was due to negligence on the part of plaintiff in error in permitting oil and

grease which caused him to slip and fall to accumulate at the place on the tank where he had to be in the discharge of his said duty. Plaintiff in error denied that it was guilty of negligence as charged against it, and alleged that if oil and grease had accumulated on the tank such accumulation "was not the result of any carelessness or negligence on its part, but was the usual, customary and ordinary condition" of such tanks. Plaintiff in error also set up as a defense against the recovery defendant in error sought against it that his injury was due to risk he assumed and to negligence on his own part. The appeal is from a judgment in defendant in error's favor for $18,000.

Terry, Cavin & Mills, of Galveston, F. J. Wren, of Ft. Worth, and Bowers & Bowers, of Caldwell, for plaintiff in error.

W. M. Hilliard, of Caldwell, A. L. Curtis, of Belton, and Winbourn Pearce, of Temple, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1] The contention that the court below erred when he refused to instruct the jury to find in plaintiff in error's favor is predicated on testimony that it was "usual and customary" for plaintiff in error and other railway companies to permit oil and grease to accumulate on engines as it appeared oil and grease had accumulated on the one in question here. It is argued that there was therefore no basis in the testimony for a finding that plaintiff in error was guilty of negligence in the particular charged against it; and, further, that said testimony that the tank was in the condition it was "usually and customarily" in showed that the risk of slipping on the tank and falling as defendant in error did was one incident to work he had undertaken to do, and therefore a risk he had assumed. Whether if "all" the testimony in the record was to the effect stated the contention should be sustained on the authority of Ry. Co. v. Alexander, 103 Tex. 594, 132 S. W. 119, and other cases cited by plaintiff in error, need not be determined; for all the testimony was not to that effect. On the contrary, there was testimony a jury had a right to believe it was not "usual and customary" for oil and grease to be on the engine as it was. For instance, defendant in error, after testifying that he had worked 12 or 18 months on the engine in question, said:

"I do not recall any instance * * * that I ever saw that accumulation on the back end of the oil tank."

Holloway, the engineer in charge of the engine in question, testified that he inspected same directly after the accident occurred, and further testified:

"There was an accumulation of grease which had accumulated there for some time, no doubt.

* * * I had never observed before this case an accumulation of oil at the back end of the tank. * * * It was nothing unusual for that oil and grease to the extent it had accumulated there on the engine to be back there on the back end of the engine tank. * * * So far as I remember that was the first time I ever noticed any particular deposit there to cause a man to slip."

Call, employed by plaintiff in error as an inspector of engines, testified that he inspected the engine in question a short time after the accident resulting in the injury to defendant in error, and then further testified:

"I found the tank in good condition, except at the extreme back end there were some little splotches of greasy sand. * * * It was cleaner than the ordinary run of passenger engines. * * * If an engine goes out with grease on the back end of the oil tank, it is going out in an unusual condition." (It appeared from other testimony that the engine in question had been out two or three hours on the trip it was making.)

Isbell, one of plaintiff in error's locomotive firemen, testified:

"It is not usual on passenger engines (as the one in question was) to find around the back end of the tank oil and grease while the engine is out on the run. It is very unusual to find that condition."

Jordan, also a locomotive fireman, testified:

"It is not usual or customary to find oily and greasy place around the back end of the oil tank."

[2] Not only does the testimony quoted acquit the trial court of the error charged against him because he refused to instruct the jury to find for plaintiff in error on the theory stated, but, when considered in connection with other testimony in the record, acquits him of error charged against him in assignments based on his refusal to grant plaintiff in error a new trial on the ground that it appeared from a preponderance of the testimony that it was not guilty of negligence and that the injury to defendant in error was due to a risk he assumed.

In his main charge the trial court instructed the jury to find for plaintiff in error if they believed from the evidence "that plaintiff's alleged injuries were the result of a risk ordinarily incident to the service in which he was engaged as an employé of defendant, or that it resulted to him from a risk that was known to him, or must necessarily have been known to him in the ordinary discharge of the duties of his service," and in a special charge unconditionally requested by plaintiff in error instructed them to find for it if they believed from the evidence:

"That plaintiff's alleged injuries resulted from and were caused by an accumulation of oil and grease on the tip of the oil tank, and that the

risk of injury from such accumulation of oil and grease was a risk ordinarily incident to the service in which plaintiff was engaged as an employé of defendant, or that such injuries resulted to him on account of such accumulation of oil and grease on the oil tank, and that the presence of such oil and grease on the oil tank was known to him, or could or should have been known to him in the exercise of ordinary care in the discharge of his duties as a locomotive fireman."

[3] We think the charges quoted sufficiently instructed the jury with reference to the issue of "assumed risk," and that the court did not err when he refused to give them another special charge, also unconditionally requested by plaintiff in error, on that issue. Under the rule applicable, the court having given one of the special charges, plaintiff in error is not entitled to be heard to complain because the court refused to give the other one. Ry. Co. v. Crosson, 39 Tex. Civ. App. 369, 87 S. W. 867; Ry. Co. v. Jackson, 51 Tex. Civ. App. 646, 113 S. W. 628; Ry. Co. v. Sample, 145 S. W. 1057; Gestean v. Bishop, 181 S. W. 696.

[4] It is urgently insisted that the verdict and judgment based thereon are excessive, but plaintiff in error does not point to anything in the record which indicates that the jury in fixing the amount of the verdict were influenced by any other consideration than a desire to do their duty. It appeared from testimony they had a right to believe that at the time he was injured defendant in error was 32 years of age; that he was earning about $100 a month as a fireman; that he had passed an examination as an emergency engineer, and according to the rules controlling was in line for promotion to the position of an extra engineer in from six to ten months, and to a position as a regular engineer in five or six years afterwards; that extra engineers were paid $150 to $200 a month, and regular engineers from $250 to $375 a month; that because of injury he suffered he would not be able to again engage in work for railroad companies as he had before the accident; that as a result of said injury (to wit, an oblique fracture of a thigh bone, necessitating the placing of his leg in plaster of paris) he was kept in his bed, on his back and not able to turn over, 48 days; that the leg was 1¼ to 1½ inches shorter than it was before the injury to it, and 1½ years after the accident 2 inches less in circumference at the thigh; that after leaving the hospital he had to return to it, when surgeons there operated on his leg, making an incision and chipping off the top part of the thigh bone with a chisel; that he was in the hospital 15 to 30 days on account of said operation; that he suffered a great deal from the fracture and injury to his knee, and at the time of the trial a year and a half after

the date of the accident still suffered, and for an indefinite time would continue to suffer, because of the fracture and injury to the knee; and that the condition of the leg in respect to its decreased length and size as stated was a permanent one. If the consequences of the injury to defendant in error were so serious, we are not prepared to say the jury abused the right the law conferred on them to determine the sum necessary to compensate defendant in error for the wrong done him, when they found in his favor for the sum specified in the statement above.

There is no error in the judgment, and it is affirmed.