ST. LOUIS SOUTHWESTERN RY. CO. OF
TEXAS v. BISHOP.    (No. 462.) *

(Court of Civil Appeals of Texas. Waco. Jan. 13, 1927. Rehearing Denied Feb. 10, 1927.)

1. Witnesses ☞388(2)—Witness, to be impeached by prior contradictory statement made verbally, must be asked whether he made particular specific statements.

To impeach witness by prior contradictory statements made verbally, witness must be specifically asked whether he did or did not make particular specific statements, so as to give him opportunity to explain statements.

2. Witnesses ☞388(2)—Where affidavit of witness contradictory to his deposition was not attached to interrogatories, and witness was not asked about specific statements, affidavit was properly excluded for impeachment purposes.

Where affidavit of witness, offered to impeach witness' testimony by deposition, was not attached to interrogatories so that it could be examined by opposing counsel and exhibited to witness when called upon to give deposition, and witness was not asked about any specific statements made therein, reasonable opportunity to explain contradictory statements was not afforded witness, and affidavit was properly excluded for want of proper predicate for its admission.

3. Appeal and error ☞930(1)—Court of Civil Appeals must view evidence in light most favorable to jury findings and judgment.

In administrator's action against railroad for death of brakeman during employment, Court of Civil Appeals is required to view evidence from standpoint most favorable to findings of jury and judgment rendered by court.

4. Trial ☞256(10)—General charge submitting issue of assumption of risk abstractly, though objectionable, was not error; defendant being under duty to request correct charges or special issues if dissatisfied.

General charge that deceased brakeman assumed risks incident to employment and resulting from railroad's negligence necessarily known to him was objectionable as submitting issue abstractly without application to facts, but was not error; it being defendant's duty, if dissatisfied, to request correct charges or special issues.

5. Appeal and error ☞882(14)—Defendant requesting special issues and special charge on assumption of risk submitted in general terms by court's special issue cannot complain that court granted charge and refused issues.

Where railroad sued for death of brakeman requested special charge and special issues on question of brakeman's assumption of risk, which had been submitted in general terms by court's special issues, court was authorized to select either requested charge or issues, and railroad cannot complain that court granted charge and refused issues.

6. Trial ☞350(7)—Special issue whether brakeman assumed risk as train "approached" defective track was properly refused, under issue whether risk was assumed as train "passed over" defective track.

In administrator's action against railroad for death of brakeman, involving issue whether brakeman, knowing of defective portion of track and excessive speed of train, continued to walk along cars as train "passed over" defective track, it was not error to refuse requested special issue whether brakeman continued to walk on cars as train "approached" defective track.

**7. Trial** ⟨⟩**350(7)—Requested special issue, leaving question of deceased brakeman's appreciation of danger to inference, held properly refused under evidence.**

Where there was no evidence that brakeman killed when falling from train knew or had any reason to anticipate that it would run at excessive speed while passing over defective portion of track, it was not error to refuse requested special issue leaving appreciation of danger to be inferred.

**8. Master and servant** ⟨⟩**217(26)—Brakeman held required to consider danger from excessive speed over defective track only if he knew speed would be maintained.**

Brakeman passing over cars of train is required to consider danger arising from excessive speed of train and defective portion of track only when he necessarily knew that excessive speed would be maintained when passing over defective track.

**9. Trial** ⟨⟩**194(19)—Special charge making brakeman's passing over moving cars contributory negligence as matter of law held properly refused; question being for jury.**

Where it was customary and proper for swing brakeman to pass over cars while train was in motion, it was for jury to determine whether deceased brakeman in attempting to pass over moving train failed to exercise ordinary care for own safety, and requested special charge making such attempt contributory negligence as matter of law was properly refused.

**10. Trial** ⟨⟩**352(1, 5)—Special issue on contributory negligence of deceased brakeman, ignoring brakeman's knowledge of railroad's negligence and assuming facts, held properly refused.**

In administrator's action against railway for death of brakeman killed when falling off train, requested special issue on contributory negligence, ignoring question whether brakeman knew of railroad's negligence in running train at excessive speed over defective track and assuming that brakeman was walking on cars when he fell, held properly refused.

**11. Death** ⟨⟩**104(6)—Charge held not objectionable as not excluding from jury's consideration possible future value of decedent's contributions for care of children.**

In administrator's action against railroad for death of brakeman, charge to include reasonable value of care and education that children would have received from deceased if not killed in estimating damages, and to limit amount of award to amount which if paid in cash would compensate children, was not erroneous, as failing to specifically exclude consideration of possible future value of care and education.

**12. Death** ⟨⟩**99(4)—$27,000 damages to widow and children for death of brakeman held not excessive.**

Verdict of $27,000 to surviving widow and four children of brakeman, killed when falling from train, who was earning $150 per month and had life expectancy of more than 30 years,

held not excessive, where record did not show anything exciting passion or prejudice of jury.

Appeal from District Court, Hill County; W. C. Wear, Special Judge.

Action by H. C. Bishop, administrator of the estate of R. C. Carroll, deceased, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Collins, Dupree & Crenshaw, of Hillsboro, for appellant.

Will M. Martin, of Hillsboro, and Edwards & Hughes, of Tyler, for appellee.

GALLAGHER, C. J. Appellee, H. C. Bishop, in his capacity as administrator of the estate of R. C. Carroll, deceased, sued appellant, St. Louis Southwestern Railway Company of Texas, to recover, for the use and benefit of the surviving widow and minor children of said decedent, damages for his death, which appellee alleged was caused by the negligence of appellant, its agents, servants, and employees. The deceased at the time of the accident which resulted in his death was employed as a brakeman on appellant's local freight train then making its regular run from Corsicana to Waco. He attempted to pass over the cars from the caboose to the front end of the train while the same was in motion, and fell therefrom to the track and was run over and instantly killed. The case was submitted to a jury on special issues. In answer thereto the jury found: (a) That appellant failed to keep and maintain its roadbed at the time and place in question in a condition reasonably safe for the deceased in the discharge of his duties as brakeman, and that such failure was negligence and such negligence a proximate cause of the death of the deceased; (b) that appellant and its employees failed to require and exercise reasonable care to operate its train with reasonable control of the speed thereof, and that such failure was negligence, and that such negligence was a proximate cause of the death of the deceased; (c) that the deceased did not assume the risk of being injured and killed as he was, and that he was not guilty of contributory negligence; (d) that the widow and minor children of the deceased sustained damages by reason of his death in the sum of $27,000, and that $7,-000 thereof should be apportioned to an afflicted child, $5,000 thereof to the surviving widow, and $5,000 to each of the other three minor children of the deceased. The judgment of the court awarded appellee a recovery for the use and benefit of said surviving wife and minor children of the deceased in accordance with the terms of the verdict. Said judgment is here presented for review.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Opinion.

Appellant presents as ground for reversal the action of the court in excluding a certain affidavit offered in evidence by it for the purpose of impeaching appellee's witness John Sullivan. Sullivan's testimony was taken by deposition. He testified, in answer to cross-interrogatories propounded to him by appellant:

"That on June 25, 1925, he made a sworn statement relative to this accident and swore to the same on the 25th day of June, 1925, before J. G. Gammell, notary public in and for Limestone county, Tex.; that that was the only sworn statement he made on that date before J. G. Gammell with reference to said accident; that he signed, swore to, and delivered said statement to Mr. Gammell in the presence of L. P. Craft; and that that was the only statement that he signed, swore to, and delivered to J. G. Gammell in the presence of L. P. Craft; that he made the affidavit at the request of Mr. Craft, but that the affidavit did not include all the statements that he made to Mr. Craft at the time, as he told him some facts that were not written in the affidavit, but that in so far as the affidavit went it did tell the facts as he saw them at the time of the accident."

No other predicate for the introduction of said affidavit for the purpose of impeaching said witness was laid. The depositions of said witness were read in evidence on the trial, and he testified therein to facts and circumstances very material to appellee's case. Appellant, at the proper time, for the purpose of impeaching said witness, offered said affidavit in evidence. It contained statements on material matters inconsistent with and contradictory of the facts testified to in said depositions. Appellee objected to the introduction of said affidavit on the ground that no predicate therefor had been laid. The court sustained the objection and excluded the affidavit.

[1] Appellant asserts that the admission of a witness that he signed a particular writing is a sufficient predicate for its admission in evidence for impeachment purposes. Appellee asserts that, whether the statement sought to be introduced for impeachment purposes be written or verbal, the witness must be asked specifically whether he did or did not make the particular statements sought to be proved, so that where there is an apparent variance between his present testimony and such statement, he shall have his attention directly called thereto and have an opportunity to explain the same. Where the purpose is to impeach a witness by a prior contradictory statement made verbally, the authorities support appellee's contention with practical unanimity. 2 Wigmore on Evidence, § 1019, p. 463. Mr. Wigmore declares the reason for said rule to be as follows:

"It has already been noticed (ante, § 1019), that to obviate the objection of unfair surprise a natural expedient is to *ask the witness* while on the stand under cross-examination, *whether he made the supposed contradictory statement.* He is thus warned that it will be offered against him by testimony later produced and he may thus either prepare to deny it if he claims not to have made it, or explain it if he admits having made it." (Italics author's.) Id. § 1025, p. 472.

Mr. Wigmore further states that the above rule had its origin in the Queen's Case, 2 B. & B. 284. Id. § 1026, p. 473. That that is a distinction between a prior verbal statement contradicting the testimony given by the witness at the trial and a written one of the same import is recognized in that case. It was therefore further held therein:

"When a witness is to be asked on cross-examination as to the terms of a document written or signed by him, the document *must be at the time produced and shown or read aloud to him* before he can be asked as to its contents; in other words, he cannot be asked whether or not he said such and such things in the document but the supposed document must be first shown to him before any questions upon its contents are allowable." (Italics author's.) Id. § 1259, p. 876.

See, also, 40 Cyc. pp. 2732–2735.

Mr. Wigmore, with reference to the application of such rule, says:

"*Opposing counsel,* as well as the witness, is entitled to inspect the document at least before the witness leaves the stand; so as to be enabled to discover explanatory features therein and to re-examine the witness upon it." (Italics author's.) 2 Wigmore on Evidence, § 1261, subd. 5, p. 888.

See, also, 3 Wigmore on Evidence, § 1861, pp. 994, 995. In this practical way all reasonable objections on the ground of surprise or lack of opportunity for explanation are obviated. The authorities cited by appellant in support of its contention, none of which are from Texas courts, are based on said rule, and recognize that the written statement should be produced and submitted to the witness for examination.

This rule with reference to the necessary predicate for impeachment by contradictory written statements did not meet with universal approval. The principal criticism was that it lessened the effectiveness of cross-examination by depriving the examiner of an opportunity to test the recollection of the witness and his veracity with reference to the contents of the writing inquired about before he knew as a fact that such writing was in the possession of the examiner and that he was prepared to produce it. 2 Wigmore on Evidence, § 1260, subd. (4), p. 881. Mr. Wigmore says that such rule also had its origin in said Queen's Case, that it had never before been advanced, and that it was shortly thereafter expressly annulled in England by legislative action. Id. § 1259, pp. 876, 877. After such action, according to Mr. Wigmore, the necessity in such cases for

producing and reading the writing was dispensed with, and cross-examination of witnesses on the contents. of such writings for predicate purposes permitted without such production or reading. Of course if the witness on cross-examination denied the statements. made in the writing, such writing was admissible for the purpose of impeachment and was itself the best evidence of its contents. Id. § 1263, p. 890. Our Supreme Court at an early date recognized the right of a witness and of the party offering and relying on his testimony to have the predicate for his attempted impeachment disclose the specific statement deemed to be contradictory of his testimony at the trial, without distinction between verbal and written statements, so that the right of explanation might be safeguarded. Bigham v. Carr, 21 Tex. .142, 147; Weir v. McGee, 25 Tex. Supp. 20, 32, 33; Ayres v. Duprey, 27 Tex. 593, 597, 598, 600, 86 Am. Dec. 657; Alexander v. Lewis, 47 Tex. 481, 492; Johnson v. Richardson, 52 Tex. 481, 495; Marx v. Heidenheimer, 63 Tex. 304, 306. The Court of Civil Appeals for the Third District, in the case of Missouri, K. & T. Ry. Co. v. Calnon, 20 Tex. Civ. App. 697, 50 S. W 422, 424, held that a party had the right, in order to lay a predicate to impeach a witness if he denied the statement attributed to him, to ask him whether or not he had made such statement, even though it were made in writing, and the Supreme Court refused a writ of error. See, also, Burleson v. Collins (Tex. Civ. App.) 28 S. W. 898, 900 (writ refused); Lloyd & Son v. Kerley (Tex. Civ. App.) 106 S. W. 696, 697; Texarkana Gas & Electric Co. v. Lanier, 59 Tex. Civ. App. 198, 126 S. W. 67, 69, 70; Conrad v. Griffie, 16 How. 38, 14 L. Ed. 835.

[2] The predicate laid by appellant for the introduction of Sullivan's affidavit to impeach the testimony given by him in his deposition did not comply with the requirements of either rule. The affidavit was not attached to the interrogatories so it could be examined by opposing counsel and exhibited to the witness when called upon to give his deposition. Neither was the witness asked about any specific statement made therein. A reasonable opportunity for explanation of the inconsistent and contradictory statements contained therein was not afforded by the course pursued in attempting to lay a predicate for its introduction. The action of the court in excluding said affidavit on the objection urged thereto by appellee constitutes no ground for reversal.

[3] Appellant presents as ground for reversal the action of the court in overruling its objections to the manner in which the issue of assumed risk was submitted in the general charge of the court. Appellant also in this connection presents as ground for reversal the action of the court in. refusing certain special issues requested by it on assumed risk. The evidence in the case is voluminous and marked by many sharp conflicts. It will be neither practical nor necessary to discuss these conflicts. We are required to view the evidence from the standpoint most favorable to the findings of the jury and the judgment rendered thereon by the court. The deceased, R. C. Carroll, had been employed by appellant on this particular train for several years. He had served continuously as rear brakeman. In that capacity his usual duties demanded that he be around the rear end of the train. There was no occasion for his being elsewhere while the train was passing from station to station, and he customarily rode in the caboose. There was evidence that the defects in the track were not perceptible to one so riding, when the train was running at the rate of speed usually employed in passing over that part of the track. On the occasion in question the deceased was acting, apparently for the first time, as swing brakeman. It was proper or necessary in the discharge of the duties of that position on leaving one station to get from the conductor or from the records kept in the caboose what is called in the evidence a switching list for the next station. Cars to be switched at the local stations were generally placed near the head of the train, and it was the duty of the swing brakeman to be there and participate in such switching when it was done. It was the general custom in the operation of local freights at the time of the accident for the swing brakeman, after getting his switching list for the next station, to pass along over the moving train to the front end thereof, and there was testimony to the effect that such action was reasonably necessary in the proper and efficient discharge of the duties of that position.

The accident occurred between Dawson and Hubbard. The deceased left Dawson in the caboose and rode therein until the train stopped at a water tank about two miles east of Hubbard. From the water tank it was down grade about half a mile to a trestle. While there was some evidence that the track was more or less out of repair as far as 1,000 feet east from said trestle, most of the evidence showed that such condition extended only about 500 feet eastward therefrom, and there was some evidence limiting the specially dangerous condition of the track to 100 feet eastward therefrom. The speed limit for that particular train from Dawson to Hubbard was 18 miles an hour. It was customary for appellant to issue orders to the engine crew to reduce the speed in passing over such places. No such order was issued on this particular trip. The train consisted of 25 cars. Just as it left the water tank the deceased climbed out of the cupola of the caboose and started over the cars toward the front end of the train. When he had passed over five box cars he climbed down onto the first oil tank car. There were three oil tank cars and then a car loaded with fencing. At

that time the train was running about 12 miles an hour. It was down grade, and the train rapidly increased its speed until, according to witnesses to the accident, it had attained a speed of from 40 to 60 miles an hour. There was no evidence that it had ever been run at such speed before that time. While running at that rate of speed deceased fell or was thrown from the front end of the oil car next to the car of fencing onto the track, between 10 and 20 feet east of said trestle and within the 100 feet of track specially characterized as dangerous by the witnesses. There was evidence to the effect that the condition of the track, combined with the speed, caused the train to swing, lurch and dip, and that the deceased was thereby thrown from said car. The testimony does not disclose whether deceased was moving or standing still at the time he fell or was thrown from said car. He was seen with a paper in his hand before the accident, and a switching list was picked up on the ground near where his body was found. No indication that his fall was caused by stumbling or slipping was discovered. It was admitted on the trial that said train was at that time hauling cars loaded with interstate shipments.

The issue of assumed risk was presented by the court in his main charge as follows:

"The defendant has interposed what is known in legal phraseology as the defense of assumed risk. By the expression, 'assumed risk,' is meant such risks or dangers, if any, as were ordinarily incident to the service in which the deceased, R. C. Carroll, was engaged at the time of his death. He assumed all risks or dangers, if any, that were ordinarily incident to the service in which he was engaged at the time of his death, and he assumed all risks or dangers, if any, which resulted to him from the negligence, if any, of the defendant company, its agents or employees, of which he knew or in the discharge of his duties with ordinary care would necessarily have known, but he did not assume any risk or danger, if any, which arose from the negligence, if any, of the defendant company, its agents or employees, unless he knew of such risk and the resulting danger to him or in the discharge of his duties with ordinary care he would necessarily have known of the same.

"Now, bearing in mind these instructions relative to the law of assumed risk, you will answer the following question: Special issue No. 8: Did the deceased, R. C. Carroll, at the time or on the occasion in question, assume the risk of being injured and killed as he was? Answer 'yes' or 'no.'"

Appellant objected to said paragraph of the charge as follows:

"Defendant objects and excepts to special issue No. 8 submitted to the jury by the court for the reason that the same calls on the jury to decide a question of law or a mixed question of law and fact, and does not call upon the jury to find those facts from which the conclusion of law is to be drawn by the court."

Appellant also requested the following charge, which was given:

"You are instructed that even though you may believe from the evidence that the deceased was thrown from the defendant's car by the jerking or lurching of the same, and further believe that the defendant failed to exercise ordinary care to maintain its track and roadbed in a reasonably safe condition at the time and place in question, and that its employees did operate its train at a greater rate of speed than was consistent with ordinary care for the safety of themselves and their coemployees, yet if you further believe that the deceased knew, or in the discharge of his duties with ordinary care would necessarily have known, of the danger to him of walking over and along the cars in said train under such conditions, then and in that event you will answer special issue No. 8 submitted to you by the court 'yes.'"

Appellant also requested the court to submit the following group of issues:

"(3) Did the deceased, R. C. Carroll, know or in the discharge of his duties with ordinary care necessarily know that the track and roadbed of the defendant at the particular place in question was in the dangerous and unsafe condition? You will answer 'yes' or 'no.'

"(4) Did the deceased, R. C. Carroll, know, or, in the discharge of his duties with ordinary care, necessarily know, that the operatives in charge of the defendant's train on the time and place in question were failing to exercise ordinary care to operate said train with reasonable control of the speed thereof? Answer 'yes' or 'no.'

"(5) Did the deceased, R. C. Carroll, with knowledge, either actual or constructive, of the condition of said track, and with knowledge, either actual or constructive, of the rate of speed at which said train was approaching said portion of said track, continue to walk along the cars on said train as it approached said portion of said track?

"(6) Did the deceased, R. C. Carroll, know, or in the exercise of ordinary care in the discharge of his duties necessarily know, the effect that the operation of said train at the rate of speed it was approaching said track and the condition of said track would have upon said cars?"

[4] The submission of the issue of assumed risk by the court in his general charge was objectionable in that it was general and abstract, while it should have been concrete and applicable to the particular facts in this case. Fort Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 235 S. W. 664, 667 (writ refused). While the manner of submission was objectionable in form, such submission was correct in substance. It therefore devolved upon appellant, if it desired a more specific and concrete submission of such issue, to prepare and request correct charges or issues so presenting the same. Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 335, 179 S. W. 513; Fox v. Dallas Hotel Co., 111 Tex. 461, 476, 477, 240 S. W. 517; Pyron v. Brownfield (Tex. Civ. App.) 269 S. W. 202, 205;

Freeman v. G. H. & S. A. Ry. Co. (Tex. Com. App.) 287 S. W. 902.

[5] Appellant did prepare and request the charge and group of issues above quoted. In addition thereto it requested another special charge, instructing the jury with reference to their answer to said special issue No. 8, which charge was refused. Said charges and said group of issues seem to have been requested generally and not in successive or preferential order. The requested charge so given presupposed that special issue No. 8 would be submitted to the jury for determination. Under the circumstances the court was justified in assuming that if said requested charge was given, appellant's objection to the manner in which the issue of assumed risk was submitted would be removed. Both the requested charge given and the group of issues refused involved the question of whether deceased walked along and over the moving cars with knowledge of the condition of the track and the excessive rate of speed. Such being the case, the court was authorized to select and present to the jury either the requested charge or the requested group of issues, and appellant is in no position to complain of such selection. St. L. S. W. Ry. Co. of Texas v. Haney (Tex. Civ. App.) 94 S. W. 386, 388 (writ refused); I. & G. N. R. R. Co. v. Ford (Tex. Civ. App.) 118 S. W. 1137, 1139 (writ refused); Alamo Dressed Beef Co. v. Yeargan, 85 Tex. Civ. App. 92, 123 S. W. 721-723 (writ refused); Chicago, R. I. & G. Ry. Co. v. Green (Tex. Civ. App.) 135 S. W. 1031, 1033 (writ refused); St. L. S. W. Ry. Co. v. Aston (Tex. Civ. App.) 179 S. W. 1129, 1133 (writ dismissed); Waggoner v. Sneed, 53 Tex. Civ. App. 278, 118 S. W. 547, 549; Gestean v. Bishop (Tex. Civ. App.) 181 S. W. 696, 697; G. C. & S. F. Ry. Co. v. Crow (Tex. Civ. App.) 220 S. W. 237, 239.

[6] We are of the opinion, however, that the requested group of issues should not have been given in the form in which the same was presented. Issue (5) requested the jury to answer whether the deceased, with knowledge of the condition of the track (evidently meaning with knowledge of the condition and location of the defective and dangerous portion of said track), and with knowledge of the rate of speed at which said train was *approaching* said portion of the track, continued "to walk along the cars on said train as it *approached* said portion of the track." (Italics ours.) In one sense, the train was *approaching* said defective and dangerous portion of the track from the time it left the water tank. When deceased climbed down onto the first of the three oil-tank cars the caboose was just past the water tank, and the speed of the train did not exceed 12 miles an hour. The train continued to *approach* said defective track until it reached the same. The real issue was whether deceased, with knowledge of the condition and location of the defective and dangerous por-tion of the track, and the excessive speed of the train, continued to walk along the cars as the train *passed over* such defective and dangerous portion of the track. The evidence shows affirmatively that the deceased "continued to walk along the cars" as the train *approached* such defective and dangerous portion of the track, but it does not show affirmatively that he "continued to walk along the cars" as that part of the train upon which he was riding *passed over* such portion of the track.

[7, 8] We further think that issue (6) did not adequately present the question of whether the deceased appreciated the danger of being thrown or caused to fall from said train as it passed over said defective and dangerous portion of the track. There is no evidence in the record tending to show that the deceased, at the time he left the caboose and started over the cars to the front end of the train, knew or had any reason to anticipate that it would be run at an excessive rate of speed while passing over such portion of the track. He had a right to assume that the speed of the train would be appropriate to the condition of the track. Only when he necessarily knew that an excessive rate of speed would be maintained in passing over said portion of the track was he required to consider the resulting danger to his own safety arising from such combination of circumstances. Cox v. St. L. & S. F. Ry Co., 111 Tex. 8, 14, 15, 222 S. W. 964, and authorities there cited; Texarkana & Ft. S. Ry. Co. v. Casey (Tex. Civ. App.) 172 S. W 729, 733 (writ refused), and authorities there cited. The appreciation of such danger at the time was an essential element of the issue of assumed risk. His appreciation of such danger, instead of being submitted directly, was left by said issue to be inferred from knowledge on his part of the combined effect of the excessive speed and dangerous track upon the cars composing said train. Said group of issues should not have been submitted in the form in which same was presented. Appellant therefore failed to comply with the rule laid down in Wells Fargo & Co. v. Benjamin, supra, and the authorities cited in connection therewith. The action of the court in the matters here considered did not constitute reversible error.

Appellant presents as ground for reversal the action of the court in refusing its special requested charge and its special requested issue on contributory negligence. The court in his charge to the jury defined negligence, and then instructed the jury that contributory negligence as used in said charge meant some negligence on the part of the deceased which, concurring with some negligence of appellant, its agents or servants, caused or contributed to his death. The court then submitted his special issue No. 9 as follows:

"Was the deceased, R. C. Carroll, on the occasion of his death, guilty of contributory neg-

ligence, as that term is hereinbefore explained? Answer 'yes' or 'no.' "

Appellant objected to the court's charge on the ground that the evidence showed that deceased was guilty of contributory negligence as a matter of law, but it did not object to the manner in which such issue was submitted to the jury. Appellant, however, requested the following special charge:

"You are instructed that if on the time and occasion in question the deceased, R. C. Carroll, voluntarily and unnecessarily abandoned a place of safety and assumed and put himself into a dangerous position, and that such action, if any, on his part contributed to cause his injuries, then you are instructed that you will answer special issue No. 9 submitted to you by the court in the affirmative."

Appellant also requested the court to submit to the jury for determination the following special issues:

"If you have found in answer to special issue No. 1 submitted to you by the court that the defendant failed to keep and maintain its track and roadbed in a reasonably safe condition, and if you have found in answer to special issue No. 4 submitted by the court that the defendant failed to exercise ordinary care to operate its trains with reasonable control of the speed thereof, then you will answer the following special issue: Special issue No. 2: Would a person of ordinary prudence, in the exercise of ordinary care and caution for his own safety, have continued to walk along the cars in said train under said conditions and circumstances?"

[9, 10] The court refused both said charge and said issue. We do not think the court erred in doing so. It is apparent that the "place of safety" referred to in said charge was the caboose, and that the "dangerous position" referred to therein was on top of said moving train. The overwhelming weight of the testimony shows that it was customary for a swing brakeman in the discharge of the duties of that position to pass while the train was in motion between stations from the caboose to the front end of the train over the tops of the moving cars. There was testimony tending to show that such action contributed to the expeditious discharge of the duties of such brakeman in connection with the switching to be done on arrival at the next station. There was neither pleading nor proof that appellant ever issued any instruction or formulated and promulgated any rule forbidding such brakeman from passing from the rear to the front end of the train while the same was moving on its journey from one station to the next. There was testimony that in the proper and ordinary operation of a train it was not considered dangerous for them to do so. In this condition of the record, it was clearly a question for the jury to determine whether the deceased, under the facts and circumstances in evidence, by leaving the caboose and attempting to pass therefrom to the front end of the moving train over the tops of the cars, failed to exercise ordinary care for his own safety. The requested charge erroneously made his leaving the caboose and attempting to pass over the tops of the cars contributory negligence as a matter of law. The requested issue ignored the question of whether deceased knew of the negligence of appellant referred to in the preamble thereto, and assumed as a fact that he "continued to walk along the cars in said train" and that he was so walking when he fell or was thrown therefrom. These holdings are supported in principle by the following authorities: Freeman v. G. H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607-609, and authorities there cited, and Crow v. Monroe (Tex. Civ. App.) 273 S. W. 886-888, and authorities there cited.

[11] Appellant presents as ground for reversal a complaint of the charge of the court on the measure of damages. The court charged the jury, in substance, that neither the widow nor any child of the deceased could recover any damages for bereavement on account of his death or for loss of his companionship or society or for solace on account of his death. He further charged, in substance, that in estimating the amount of damages which the four children of the deceased had sustained by reason of his death, the jury might take into consideration the pecuniary benefits which the evidence might show they had lost by reason of his death, including not only money but also the reasonable value of such nurture, care, education, and training as they would have received from the deceased had he not been killed. The court further charged the jury in estimating the damages sustained by the widow and children of the deceased, to limit the amount "awarded to said widow or either of said children to such sum of money as you believe from the evidence will, if paid in cash now, reasonably compensate the said widow and children of the deceased, respectively, for the damages they have sustained by reason of his death." Appellant's only objection to said charge on the measure of damages was as follows:

"Defendant objects and excepts to that portion of the court's charge immediately following special issue No. 7, wherein the court is charging the jury as to the rule as to the measure of damages for that said portion of said charge, and said charge as a whole fails and omits to specifically and pointedly inform and instruct the jury that in awarding the damages they can only give to the children the present value of the nurture, care, education, and training, and does not exclude specifically from the jury's consideration the possible future value of the same."

No further charge on this issue was requested. The charge of the court in this case is on the point at issue substantially the

same as the charge considered by the court in the case of G. C. & S. F Railway Co. v. Moser (Tex. Civ. App.) 277 S. W. 722, 723, in which case the Supreme Court dismissed an application for writ of error for want of jurisdiction. We quote from the opinion in that case as follows:

"Appellant labors at great length to show that the trial court did not instruct the jury to reduce such future contributions as appellees had a right to expect from the deceased, had he lived, to a present value. We find no merit in this. The language of the charge was that they should fix same 'at such sum of money as if paid in cash at this time would be sufficient to fairly compensate the surviving wife and child for such actual pecuniary loss,' etc. The language 'at this time' clearly encompassed present value of future expectations."

The overruling of appellant's said objection to the charge of the court constitutes no ground for reversal.

[12] Appellant contends that the damages awarded in this case are excessive, and presents such contention as ground for reversal. The deceased was employed as a brakeman at a salary of $150 a month, exclusive of overtime, for which he sometimes received additional compensation. He had a reasonable expectation of promotion to a more responsible and lucrative position. He had a life expectancy of more than 30 years. Out of his salary he spent each month $125 or more in supporting his family and providing them with the comforts of life. He was affectionate to his family and attentive to the care, training, and education of his children. The jury awarded damages in the sum of $27,000, and apportioned the same equally among the surviving wife and four minor children of the deceased, with an extra allowance of $2,000 additional to one of the children who was both mentally and physically unable to care for himself. The record does not contain anything reasonably calculated to excite passion, prejudice, or other improper motive on the part of the jury. While the aggregate amount of damages awarded is large, we cannot say that such amount is in itself sufficient to indicate an improper influence or motive. When considered in connection with the evidence, we cannot say that the damages so found do not represent the honest judgment of the jury as to the pecuniary loss sustained by the surviving wife and minor children of the deceased, nor that the rules prescribed by the courts for the assessment of such damages were violated by the jury in making such assessment. The amount of the verdict and judgment is amply supported by precedent. I. & G. N. Ry. Co. v. Ormond, 64 Tex. 485, 490; M. P. Ry. Co. v. Lee, 70 Tex. 496, 503, 7 S. W. 857; M. P. Ry. Co. v. Lehmberg, 75 Tex. 61, 67, 68; Hines v. Mills (Tex. Civ.

App.) 218 S. W. 777, 780, 781; St. Louis S. W Ry. Co. v. Pyron (Tex. Civ. App.) 278 S. W. 270–272; Ft. W. & D. C. Ry. Co. v. Stovall (Tex. Civ. App.) 272 S. W. 594, 596, 597; G. C. & S. F. Ry. Co. v. Moser (Tex. Civ. App.) 277 S. W. 722, 723; Lancaster v. Cox (Tex. Civ. App.) 274 S. W. 200, 203; T. & N. O. Ry. Co. v. Harrington (Tex. Civ. App.) 241 S. W. 250–252.

We have considered all the other propositions submitted by appellant as ground for reversal of the judgment appealed from. We do not believe that any of them require or justify such action.

The judgment of the trial court is affirmed.