Fort Worth & Denver City Railway Company v. Robert Thompson.

| 75 | 501 |
| 89 | 174 |

No. 6078.

1.   **Declarations.**—What a witness thought and said at a time prior to the trial in regard to a material fact can not be detailed by him on the trial in response to a leading question unless his answer be sought for the purpose of impeaching his testimony; if that be the object, his attention must be first called to the time, place, and circumstances under which the declarations were made.   If such testimony be admitted, and be of a character likely to have influenced the verdict, it will constitute cause for reversal.

2.   **Experts.**—Every employment which has a particular class devoted to its pursuit is an art or trade, and a person instructed therein by study or experience may, as to a matter peculiar to such employment, give his opinions as an expert when testifying as a witness.   One who has had long experience as a railroad brakeman, who has in person investigated the physical facts connected with the derailment of a car, may give his opinion as to its cause.

3.   **Same.**—An expert may be asked his opinion regarding facts affecting a matter peculiar to his art or employment when the facts are undisputed, but he can not be asked his opinion as to the evidence in the case as rendered.   Such a practice would usurp the province of the jury, who must weigh credibility.

4.   **Evidence.**—The question at issue in a suit for damages resulting from the derailment of a railway car being negligence *vel non*, a witness who helped to construct the road, and who was engaged as brakeman when the accident happened, may state facts within his knowledge showing the defective construction of the road when the

derailment occurred, though the pleadings may not have charged specifically that the road was wanting in permanence of construction when built.

5. **Same.**—Though evidence be improperly admitted, if of a character not calculated to influence the verdict, its admission will afford no ground for reversal.

APPEAL from Tarrant.    Tried below before Hon. J. Y. Hogsett, Special District Judge.

The opinion states the case.

*J. M. O'Neil*, for appellant. — 1.   The court erred in admitting the testimony of the witness Fowler as to the cause of the accident.   The expert witness by giving such opinion was leaving nothing, or very little, for the jury to do to decide the case, if they believed the witness.

2.   It was the duty of the jury to ascertain from the evidence the cause of the derailment.   This expression of opinion invaded their province, as it was expressing an opinion on the very point in issue.

3.   The court erred in permitting the witness Fowler to answer the hypothetical question as to whether the cabooses would have remained on the track if the engine drawing them was moving at the rate of twenty-five or thirty miles per hour, without stating hypothetically all the other facts disclosed by the evidence likely to affect their position after the accident.   New Eng. G. Co. v. Lovell, 7 Cush., 319; Railway v. Conroy, 68 Ill., 560; Shafter v. Evans, 53 Cal., 32; Cooper v. The State, 23 Texas, 331; Rogers' Exp. Test., pp. 8, 9, 13.

4.   The court erred in permitting the witness Williams to repeat an extra judicial and unsworn statement, which he claimed to have made to one A. D. Goodenough some time after the accident, while they together were looking for some apparent cause for the accident.

*Ball & McCart*, for appellee. — 1.   The court did not err in admitting the testimony complained of, it being expert testimony, and admissible on that ground, the witness Fowler having been present at the time of the accident, and having examined the track.   Tompkins v. Toland, 46 Texas, 590; Railway v. Klaus, 64 Texas, 293.

2.   The testimony was admissible for the purpose of contradicting and impeaching the defendant's witness Goodenough.

3.   Under the allegations of plaintiff's petition proof of the low joint was admissible, although it was not specially alleged to have been the cause of the accident.   Railway v. De Milley, 60 Texas, 194.

4.   The court did not err in permitting the questions to and answers of the witnesses Williams and Dietz, they having qualified as experts, and the fact as to the rate of speed being twenty-five or thirty miles per hour having been testified to by several witnesses for defendant, and the other facts as to the number of cars attached and their not being overturned

being undisputed. Rogers on Exp. Test., p. 39, sec. 25; Gottlieb v. Hartmann, 3 Col., 53; Cowley v. People, 83 N. Y., 494.

HENRY, Associate Justice.—Appellee brought this suit to recover damages for personal injuries received by him while employed as an engineer by the defendant.

Plaintiff's petition charges that while he was engaged in running an engine on defendant's railroad it ran off the track, falling on top of him, and inflicting the injuries of which he complains. He charges that the derailment was caused by defendant failing to keep its track at the place where it occurred in proper repair and failing to cause the same to be properly guarded and inspected, and by permitting its road bed at said place to become and remain out of repair; that the ties upon which the rails rested were old, rotten, and worthless; that the rails were insufficiently and improperly laid and fastened, so that they spread when the engine ran on them; and that defendant had failed to have its track inspected.

Defendant insists that its track was in good condition, and that plaintiff's injuries were caused by his own unskillfulness in running the engine backwards at an unusual and dangerous rate of speed.

Judgment was rendered in favor of plaintiff, upon the verdict of a jury, for ten thousand dollars, and the case is .before us upon assignments of error relating exclusively to rulings made during the progress of the trial upon the admission of evidence.

Plaintiff asked one of his witnesses the question, "What did you say about the track spreading?" To which he answered, "I say I thought that was what caused the wreck." In reply to another question the same witness answered that he thought the derailment was caused by a low joint.

The defendant objected to the answers on the ground that they were conclusions of the witness. It is insisted that there being two theories as to the cause of the derailment—one on the part of plaintiff "that it was caused by a defective track," and the other on the part of defendant that "it was occasioned by plaintiff running the engine backward at too high a rate of speed"—these expressions of opinion by the witness were invasions of the province of the jury. The evidence was admitted on the ground that the witness had qualified himself to testify as an expert.

This witness was a brakeman on the train at the time of the accident; and testified that he had been doing such work for about ten years, and had investigated this derailment at the time and the causes of others. The witness also stated the facts connected with the accident in controversy, and those upon which his conclusion was predicated. The rule, as stated in Lawson on Expert Evidence, is that, "Every employment which has a particular class devoted to its pursuit is an art or trade, and persons instructed therein by study or experience may give their opinion."

We think the business of railroading comes sufficiently within the rule to make opinions of those who are engaged in it admissible, and we do not think that such evidence as was given in this case could have had any tendency to prevent a fair trial or mislead the jury.

Plaintiff asked the same witness the following question: "If the engine had been running at a speed of twenty-five or thirty miles an hour, would it have been possible for the other cars to have remained on the track?"

Defendant objected to the question on the ground that it sought a conclusion of the witness upon a state of facts not in evidence. Defendant's counsel having stated to the court that he intended to offer evidence that just previous to the occurrence of the accident the train was being run at that rate of speed, the court overruled the objection.

It is insisted that it appeared from the evidence subsequently introduced that there were many facts which, had they been submitted to the witness, would have modified his conclusion or led to a different one.

Wharton, in his Law of Evidence, says: "The better opinion is that an expert can not be asked his opinion as to the evidence in the case as rendered, not only because it puts the expert in the place of the jury in determining as to the credibility of the facts in evidence, but because the relief thus offered is in many trials only illusory, experts being often in conflict, and the duty devolving on court and jury of supervising such conclusions of experts being one which can rarely be escaped. When, however, certain facts are undisputed, the opinion of an expert can be asked as to the conclusions to be drawn from them." Sec. 452.

Another witness for plaintiff was asked by him to state "how the road was constructed at the place of the accident with regard to the track getting out of condition after a rain, and over the low ground, and all." To which defendant objected, because plaintiff had not in his pleadings charged the improper construction of the road; and as the evidence showed three years had elapsed between the time the road was constructed and the occurrence of the accident, the evidence could not support the charge of negligence in not keeping the track in repair. The court overruled the objection, and the witness testified as follows: "In that place there in the valley always after a rain that track would get out of line; the boss would stop us nearly every rain to throw the track in line through the valley over that bridge." This witness was a fireman on defendant's engine at the time of the accident, and had also helped to construct the road at that point three years before. We think under the circumstances his answer was admissible.

Plaintiff asked a witness the following question: "State whether or not the section men had been removed from that part of the road down to another part?"

The defendant objected to the question, because leading. The court overruled the objection and the witness answered: "Well, the section

men, as far as I know, had been taken from that section to one south of it to repair damages to the track caused by washouts.    There might have been other section men right on the section, but I don't know of it."

The only aspect of the question affecting the issues on trial was that with reference to the removal of the hands from the portion of the road where the accident occurred.    For the purposes of this cause it was immaterial where they were removed to.    In its connection with this case we do not think the objection well taken; nor do we think that either the question or answer ought to have been excluded.

Williams, a witness for plaintiff, was asked the question: "State whether or not a low joint was calculated to cause a derailment of the engine?"    To which defendant objected, because plaintiff's petition charged the derailment to a different cause.    The court overruled the objection, and the witness answered as follows:    "I could not say that it would necessarily follow that it would."    We think the allegations in the pleadings are broad enough to admit the evidence, and if they were not, the answer was not of a character to prejudice defendant.

This same witness was asked by plaintiff the following question:    "I will ask you if you called Goodenough's attention to the low joint, telling him that, in your opinion, that was the cause of the derailment, and whether you stated to him that 'You and I are old enough railroad men to see plainly that was what had derailed us,' or words to that effect?"

Goodenough was a witness for defendant, and on his cross-examination by plaintiff had testified that he did not "state to Mr. Williams that the low joint caused the derailment, and did not remember that Williams called his attention to said joint, nor what was said between Mr. Williams and himself at the time."

The defendant objected to the question to Williams, both because it was leading and because the testimony was inadmissible for the purpose of impeachment.

The court overruled the objection, and the witness answered:    "My remark to Goodenough was that he and I were old enough railroad men not to search any further for the cause of the accident."

The witness was then asked by plaintiff the further question, "What did you mean when you said to Goodenough, 'we are good enough railroad men to know what caused this derailment?'"    The answer was, "I meant that I thought in my own mind that the cause of the accident had been discovered."

This witness further testified, "Of course I was not positive what threw the engine from the track, but I decided in my own mind that was the cause of it.    I could not see anything else that could do it.    Goodenough, defendant's roadmaster, was with me there at the time, and he and I both observed the same joint at the same time."

We think it is too clear for controversy that the evidence objected to

was inadmissible in any point of view, and it ought to have been excluded when objected to. It was not admissible for the purpose of contradicting Goodenough, because no proper predicate was laid. The evidence seems to have been admitted on the theory that a predicate was laid for it in the examination of Goodenough. But to so hold would be an entire misapplication of the rule unless it had been Goodenough's declaration, and not that of the witness, that was in issue.

We see nothing in the matter but the statement of a witness of what he thought and said on another occasion, made in reply to a leading question asked by the party producing him, over the objection of the opposite party.

We all concur in the opinion that the evidence ought to have been excluded. ·

A majority of the court is of opinion that the improperly admitted evidence was material, and that the cause must be reversed for the error committed in allowing it.

As the witness during the trial testified to the same facts, independently of his improper statements of what he thought and said on the first occasion, I do not think the objectionable evidence was material or of a character to influence the verdict, and do not concur in the conclusion of the majority of the court as to the disposition of the cause.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 28, 1889.

Motion for rehearing overruled December 20, 1889.