## MARIE OTTO v. CLARENCE SELLNOW.[1]

February 16, 1951.

No. 35,319.

*Carroll & Thorson,* for appellant.

*M. J. Daly,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

[1]Reported in 46 N. W. (2d) 641.

The facts in this case are not in dispute. Plaintiff was a passenger in a 1940 Chevrolet coach owned by defendant and driven at the time of the accident by his father, William Sellnow, who was killed in the accident. It occurred on September 12, 1948, between 2 and 2:15 p. m. on highway No. 55 about four miles west of Paynesville, Minnesota. Plaintiff's family, consisting of herself, her husband, their two minor children, and defendant's family, consisting of himself, his wife, and his father, were returning to their neighboring homes in Blakely township, Minnesota, from a fishing trip at Perham, Minnesota, when the accident occurred. The four Ottos were riding in the rear seat, and the Sellnows were in the front seat of defendant's car. The entire party left their homes in Blakely township about nine o'clock in the evening of September 11 and drove to Perham, a distance of approximately 200 miles. They arrived at Perham about 2:30 a. m. on September 12 and slept in the car until about 5 or 5:30 a. m., when they went fishing. They fished until about 11 o'clock in the forenoon and then started on their return trip. They arrived at Glenwood, Minnesota, about one o'clock in the afternoon and stopped there for lunch. They left Glenwood at approximately 1:20 and continued on their homeward journey until the accident occurred about one hour later.

The evidence appears undisputed that highway No. 55 is a hard-surfaced highway running in a generally east-west direction; that for a considerable distance on both sides of the place where the accident occurred the highway is straight and level; and that there was no traffic in the immediate vicinity at the time the accident occurred. At the time of the accident, William Sellnow, defendant's father, somewhat over 60, was driving the car with the consent of defendant. Defendant's wife was seated between him and the driver, and the Ottos were in the rear seat. The record shows that after leaving Glenwood defendant's car was traveling toward the east at a speed of 50 or 55 miles per hour. The afternoon was clear and the visibility good. The road was about 20 to 22 feet in width, of tarvia surface, smooth and dry.

When the automobile reached a point about four miles west of Paynesville, the passengers heard a loud noise in the vicinity of the rear left tire. About the same time, the car started to sway and to roll over on the road and continued to roll for a distance of about 75 feet, when it came to rest with the front end facing south on the edge of the highway. After the accident, an examination disclosed that the left rear tire had blown out.

Defendant testified that he had purchased the automobile in 1940 and operated it since that time; that his father drove it occasionally; that he had had a general overhaul job done on the car in April or May 1948; and that he had had it greased and the oil checked a few days before the accident. He said also that he had purchased new tires and tubes in the spring of 1948; that they were the same ones which were on the automobile at the time of the accident; and that they had been operated approximately 3,000 or 4,000 miles when the accident occurred. He testified that a day or two before the accident he had his car checked at an oil station for gasoline and also had the tires checked for air; that they were all properly "aired"; that the general working condition of the car on the trip was good; and that they had no trouble with it or the tires either on the trip to Perham or on the return trip until the accident happened. He said that he did not check the tires during the trip. It appears that defendant, his wife, and his father each drove part of the way on the trip and that the father took over the driving after they stopped for lunch at Glenwood.

Defendant moved for a directed verdict at the close of plaintiff's testimony and again at the close of all the testimony, which motions were denied. The jury returned a verdict for plaintiff. Defendant moved for judgment notwithstanding the verdict, which was also denied. Judgment was entered for plaintiff in May 1950, from which this appeal was taken.

Plaintiff contends that the evidence justifies the verdict of the jury. She places particular stress upon the testimony to the effect that the automobile involved was eight years old at the time of

the accident; that it was being operated at a speed between 50 and 55 miles an hour; that defendant was a man weighing about 215 pounds; that his wife weighed about 155 pounds; that his father weighed about 210 pounds; that they were all people of stocky build; that they all occupied the front seat of the 1940 Chevrolet at the time of the accident; and that the combined weight of the Otto family, seated in the back seat of the car, was somewhat over 550 pounds. The record shows that in addition to this they were carrying in the car about 100 pounds of fishing tackle and a spare tire weighing about 40 pounds, making a total weight of passengers and supplies of around 1,300 pounds.

Plaintiff claims that defendant testified on cross-examination that with three of them riding in the front seat they did not have as much room as they would ordinarily have and that this was an admission on the part of defendant that they were crowded. An examination of defendant's testimony in this respect discloses that he admitted that the car was loaded "pretty heavy," but said that "it was good riding." When questioned whether the three riding in the front seat made it "pretty crowded," he replied, "We had plenty of room. * * * Not very crowded," but said that it was crowded to a point where they did not have as much room as they ordinarily would have.

While plaintiff agrees in her brief that 50 miles an hour under ordinary conditions would have been a reasonable rate of speed for the car, she argues that on the particular highway involved 50 miles an hour was an unreasonable and negligent rate of speed at which to operate an automobile loaded as heavily as this one was at the time of the accident. It is her claim that if the tire blew out before the car started to sway it did so because of the fact that it was being operated at a negligent rate of speed, loaded as heavily as it was. She maintains that this was not a case where the tire could have blown out because of some hidden defect not known to defendant, since the tire had already been driven 3,000 or 4,000 miles under all conditions, and she claims

that if there had been any hidden defects they would have shown up long before the accident.

As to the type of tires used on the rear wheels at the time of the accident, including the one that blew out, plaintiff contends that they were of an inferior grade. Defendant testified that they were "Knobbys, ground grip," with the trade name of a well-known mail-order concern; that he had purchased them at a retail store of the concern in Mankato in the spring of 1948; that at that time he had also bought new tubes; that the tires and tubes were mounted by the company from which he had purchased them; that they were the same tires that were on the car at the time of the accident; and that they had been in use about 3,000 or 4,000 miles. A mechanic who towed the car to a garage after the accident testified that he looked over the tire after the blowout; that it had a hole in it; and that it showed a little evidence of wear, but "From the outward appearance it was in good condition." Plaintiff concludes that it was negligence for the car, loaded as it was, with the tires which she says defendant admitted were of inferior grade, to be driven at a speed of 55 miles an hour. We can find no testimony where defendant admitted that the tires were of an inferior grade. Neither do we find any testimony that the driver of the car stepped on the brake after the blowout occurred. When asked about this, defendant replied that he did not know.

Defendant argues that the record is entirely devoid of any evidence which sustains a finding of negligence on the part of William Sellnow, deceased driver of the car, or on the part of defendant. He maintains that this is simply a case where a driver, operating a car on a well-maintained highway at a reasonable rate of speed without negligence, had the misfortune to have a blowout. He argues that there was no evidence that after the blowout the driver did or failed to do any act which any prudent person would or would not have done, or that he, as owner, was negligent.

Defendant assigns as error that the verdict is not sustained by the evidence and that the trial court erred in refusing to grant defendant's motion for a directed verdict and for judgment notwithstanding the verdict. The sole question before this court is whether the evidence sustains the verdict of negligence on the part of defendant.

■ M. S. A. 169.14, subd. 2, provides that when no special hazard exists the driving of an automobile at a speed in excess of 60 miles an hour in the daytime shall be prima facie evidence that it is not reasonable or prudent and that it is unlawful. "Daytime," as defined, means from a half hour before sunrise to a half hour after sunset, except at any time when, because of weather or other conditions, there is not sufficient light to render clearly discernible persons and vehicles at a distance of 500 feet. We can find no violation of that section of the statute here, inasmuch as it is undisputed that the accident occurred about two o'clock in the afternoon; that the weather was clear and the visibility good; that the highway was straight and level with no traffic in the immediate vicinity at the time; and that the speed at which the car was being operated was 50 or 55 miles an hour.

Section 169.37 provides in part:

"No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle."

The number of persons riding in the front seat at the time of the accident in the case at bar does not exceed the limitations placed by the above statute, and there is no evidence showing that the driver's view to the front or to the side of the vehicle was obstructed or that there was any interference with the driver's control over the driving mechanism of the automobile. Plaintiff emphasizes the weight and build of the occupants of the front seat of the car as creating in itself a crowded condition, but

there is nothing in the record to indicate that any of the passengers considered the condition so crowded as to interfere with the driver's control of the automobile.

Plaintiff cites Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357, in which this court held that on appeal from an order denying defendant's motion for judgment notwithstanding the verdict for plaintiff or for a new trial the evidence and all reasonable inferences to be drawn therefrom must be construed in the light most favorable to the verdict, and that it is only where evidence of the absence of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men that the court may enter upon the province of the jury and set aside a verdict for plaintiff.

Plaintiff also cites Peterson v. Jewel Tea Co. Inc. 228 Minn. 521, 38 N. W. (2d) 51. That was an appeal from a judgment entered for defendants notwithstanding a verdict for plaintiff. This court again held there that it must take the view of the evidence most favorable to the plaintiff, since the verdict must be accepted as final by both the trial court and the supreme court if it has reasonable support in the evidence.

We have no dispute with the legal principles enunciated in those cases in connection with the case at bar. However, there were entirely different fact situations in each of those cases. The Sanders case involved a collision between two cars at an intersection, and there was a conflict in the evidence. In the Peterson case, plaintiff brought an action to recover damages to his truck. He alleged that the driver of defendant's truck entered the highway from a gas-station service road going in the same direction as his truck, negligently drove the truck into the highway in the path of plaintiff's truck without yielding the right of way, and then made a sudden left turn, causing plaintiff's truck to collide with a telephone pole in an effort to avoid a collision with defendant's truck. We have no such fact situation in the case at bar. Here, the evidence is undisputed that the highway

was straight and level for a considerable distance on both sides of the place where the accident occurred and that there was no traffic in the immediate vicinity at the time of the accident. There is nothing in the record to show that things were not going along smoothly until the passengers heard a loud noise in the vicinity of the left rear tire, which later proved to be a blowout.

Olson v. Buskey, 220 Minn. 155, 19 N. W. (2d) 57, was an action for injuries sustained by plaintiff while riding as a guest in defendant's automobile. A verdict was returned for plaintiff. Defendant appealed from an order denying his alternative motion for judgment or a new trial. In that case, the automobile was owned by defendant and was driven by his wife with his consent. Plaintiff was riding in the front seat of the automobile. The car was going downhill in the city of Mankato. When it reached the lower part of the hill, the steering post of the car became loose and the steering wheel came up in the driver's hands. She had made the lower turn in the winding highway and was about to straighten out the wheels and continue down the hill when she was confronted with this sudden emergency. She tried to jam the steering rod back into place, applied the foot brake, turned off the ignition, and grabbed the emergency brake, but she had no further control over the car, which kept veering to the right, left the road at a driveway entrance, went over the driveway curb, and struck a tree. Plaintiff produced evidence that the car was being operated at a speed of about 30 miles an hour before coming to the hill and that the speed was not reduced as the automobile was driven down the hill. Recovery was sought on the ground of negligence in the operation of the automobile and also on the ground of defendant's alleged negligence in failing to inspect and keep in repair the defective steering mechanism. The trial court refused to submit the issue of negligence to the jury as it pertained to the operation of the automobile, but did submit the issue whether the steering gear was defective and whether defendant, in the exercise of ordinary care, should have known that fact. We stated there that it is the general rule that the host

driver of an automobile owes his guest the duty to operate the car with reasonable care so that the danger of riding in it is not increased or a new danger added to those assumed when the guest entered the car. (Citing cases.) We said also that when a guest enters an automobile he accepts it in its existing condition, except as to latent defects known to the driver and unknown to the guest. (Citing cases.) We further said that the rationale of the cases cited is that one who invites another to ride in his automobile is not bound to furnish a sound vehicle, but that if the host has knowledge of a defective condition of the vehicle which would make riding in it hazardous or unsafe for the guest the host has an obligation to warn the guest of such danger. (Citing cases.)

■ Applying all of these well-established rules to the facts in the instant case, we are of the opinion that the record fails to sustain the verdict of negligence on the part of defendant and that it fails to show any breach of duty by defendant because of the blowout of the tire. In this case, it does appear that a day or two before the accident defendant did have his car checked at an oil station and also had the tires checked for air. It further appears that the tires had been used for only 3,000 or 4,000 miles and that even after the blowout a mechanic who towed the car to a garage testified that while the tire involved showed a little evidence of wear it seemed to be in good condition from outward appearances. While plaintiff implies in her brief that the tire was of an inferior grade because it was not one of certain well-known makes, we cannot take judicial notice of that fact inasmuch as the evidence does not sustain that implication. Defendant testified that it was a first-grade tire purchased at the retail store of a well-known mail-order concern and that it had been in use 3,000 or 4,000 miles. There is no testimony that effectively contradicts that claim.

While plaintiff now stresses the fact that the car was overcrowded and that this was an element of defendant's negligence, we have a situation here where plaintiff and her husband, as well

as their family, must have known as fully as defendant about the number of occupants in the car. They had all been together in the same car the day before when they went on the fishing trip and again on the day of the accident when they returned. We find nothing in the record where either plaintiff or her husband had ever complained of or had suggested to defendant that something should be done to change this condition. In fact, defendant testified that in a conversation with plaintiff and her husband after the accident they said that "it was just one of those things that couldn't be helped, it was nobody's fault."

In White v. Cochrane, 189 Minn. 300, 249 N. W. 328, a passenger in an unlighted car driven at night in violation of law sued the owner and obtained a verdict. On appeal, the case was reversed with directions to enter judgment for defendant. The court there said (189 Minn. 302, 304, 249 N. W. 329):

"* * * That the car was driven unlighted and in violation of law cannot be held actionable negligence in favor of plaintiff, who with full knowledge of such violation consented to ride therein. * * *

* * * * *

"There is no testimony of any negligence of defendant or the driver other than the fact that this car left the road and plaintiff's explanation of why it did so. Instead of proving negligence of defendant or the driver as the cause of the accident, plaintiff acquits them of responsibility. The case is very similar in regard to want of proof of negligence to that of Johnson v. Bosch, 178 Minn. 363, 227 N. W. 181. In that case as in this, the plaintiff, observing and knowing conditions about as well as the driver, could not point to any fault of the driver as the cause of the mishap, and judgment was directed notwithstanding the verdict."

In the instant case, there was no proved violation of a statute, either as to speed or overcrowding of the car.

The question of a guest passenger's right to recover for damages resulting from a collision alleged to have been caused by

overcrowding arose in Price v. United States (D. C.) 50 F. Supp. 676. That was an action against the United States government (permitted by private act) for damages for injuries to passengers in a taxicab involved in a collision with a government vehicle. The cab contained ten passengers besides the driver, three of whom occupied the front seat with the driver. The court stated that the cab driver's negligence could not be imputed to the passengers, but that the evidence in the case showed that the overcrowding of the front seat of the taxicab was a danger clearly obvious to all the passengers, including plaintiff, and that they ignored this danger and did nothing to avoid it or to protect themselves from it. The court then went on to say there that, inasmuch as they neither remonstrated with the driver nor exercised their right to refuse to ride with him under such conditions, they acquiesced in the dangerous conditions under which the taxicab was operated, and they were therefore denied recovery on account of their own contributory negligence.

Unfortunate as this accident was for all parties concerned, we are compelled to the conclusion that the sudden blowout of the rear left tire was an intervening and efficient cause of the accident which appears to have been unavoidable under the circumstances.

In Prosser, Torts, § 29, an unavoidable accident is defined as an unintended occurrence which could not have been prevented by the exercise of reasonable care. The author then goes on to say that in general, under modern law, there is no liability for unavoidable accident. He further states that the automobile driver whose tire blows out is responsible for the damage done only if he has been at fault.

In connection with the use of tires, this court said in Lestico v. Kuehner, 204 Minn. 125, 133, 283 N. W. 122, 127:

"* * * The owner of an automobile may be negligent in using worn or damaged tires. In the absence of such circumstances, his guests assume such risk as arises from punctures and blowouts."

See, also, Kelly v. Gagnon, 121 Neb. 113, 236 N. W. 160; Byerly

v. Thorpe, 221 Wis. 28, 265 N. W. 76; 1 Blashfield, Cyc. of Automobile Law and Practice (Perm. ed.) § 635; 2 *Id.* § 828; 9 *Id.* § 6115; 2 Berry, Automobiles (7 ed.) § 2.447a.

Eubanks v. Kielsmeier, 171 Wash. 484, 18 P. (2d) 48, involved a case wherein plaintiff contended that the defendant was guilty of negligence in the manner of operating an automobile after a blowout occurred; that she should have stopped the car sooner than she did, or should have reduced the speed to a point where the accident would not have happened. All the evidence in that case was to the effect that defendant was a careful driver and that her speed just prior to the accident was not excessive or such as to occasion any concern to her traveling companions. The court there said (171 Wash. 493, 18 P. [2d] 51):

"No one can anticipate what contortions an automobile will go through, or what vagaries it will pursue, when a blow-out occurs. It may steer for a telephone pole, or it may seek an embankment or a ditch. The driver is usually, or at least often, powerless. Even though he may err in his immediate action, yet if it be an error of judgment only, he is not to be charged with negligence for that act alone."

Byerly v. Thorpe, 221 Wis. 28, 265 N. W. 76, involved a highway accident resulting from a sudden deflation of a tire. The jury found the defendant driver of the car negligent and returned a verdict for plaintiff, a passenger in a preceding car, which was struck by defendant's car after the tire deflation. Defendant contended that there was no credible evidence to sustain the finding of negligence, claiming that the evidence necessitated the conclusion that the sudden and unforeseen deflation of the tire, without any negligence on the part of defendant, was an intervening and efficient cause of the accident which was unavoidable. The court, on appeal, sustained those contentions.

In arriving at our conclusions in the case at bar, we have seriously considered plaintiff's claim that if the tire blew out before the car started to sway it did so because it was being op-

erated at a negligent rate of speed, loaded as heavily as it was, and that therefore the jury could well have found that because of this defendant was negligent. If we were to so hold under the facts and circumstances here, it appears to us that we would be entering the field of speculation and conjecture, since the record seems convincing that the real cause of the accident was the sudden blowout of the tire.

Reversed.