**PHOENIX REFINING CO., Inc. v.
POWELL et al.**

No. 12423.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 10, 1952.

Rehearing Denied Oct. 1, 1952.

Trueheart, McMillan & Russell, San Antonio, for appellant.

McKay & Avery, Austin, Boyle, Wheeler, Gresham & Davis, Richard T. Davis, San Antonio, for appellee.

NORVELL, Justice.

This litigation, according to the statement of attorney for appellant, resulted from "the worst and probably the last accident to occur at the Burnell underpass" on U. S. Highway No. 181, between the towns of Kenedy and Pettus, Texas. Vail Ennis, the sheriff of Bee County, testified that from fifteen to twenty people had been killed in accidents at the underpass, and it now appears that the route of the highway has been changed in the locality, probably as a result of the collision which occasioned this lawsuit.

The vehicles involved were a flat-topped truck owned by appellee, E. L. Powell and Sons Trucking Company (a co-partnership composed of E. L. Powell, H. H. Powell and B. L. Powell), and a gasoline tank truck owned by Phoenix Refining Company, Inc. The Powell truck was travelling in a southerly direction and was loaded with two separators or heat treaters designed for oil field use, which were constructed of heavy steel plate and were approximately thirty feet in length. The tank truck was travelling north and carried approximately 4000 gallons of gasoline which became ignited immediately following the collision. Ralph L. Grimes, the driver of the Phoenix truck, a passenger riding with him and M. F. Redick, the driver of the Powell truck, were all killed as a result of the collision. Redick was trapped in the cab of his overturned truck and could not be extricated before the burning gasoline reached him and caused his death.

It is indicated that this is perhaps the first of a number of lawsuits. Phoenix, as plaintiff, sued Powell for the value of its truck and Powell, by cross-action, sued to recover for the destruction of its vehicle.

Upon jury findings, judgment was rendered that neither party recover from the other. Phoenix only has appealed. As there was no surviving eye witness, the events and occurrences of the night of October 25, 1950, must be reconstructed upon a circumstantial evidence basis. It is appellant's contention that the jury findings for Powell upon which the judgment is based are supported by mere surmise and conjecture and that consequently the judgment can not stand. Law questions of "no evidence," as distinguished from the fact contentions of "insufficient evidence" or "overwhelming preponderance of the evidence," only are raised. King v. King, Tex.Sup., 244 S.W.2d 660. Appellant's prayer is for rendition of judgment in its favor and not for a remand of the case.

The case was submitted upon a total of twenty-nine issues. Those pertinent to our inquiry are the following:

Question No. 1: "Do you find from a preponderance of the evidence that the driver of the Powell truck drove said truck to his left-hand side of the highway as he approached the point of the accident in question? Answer: Yes."

Question No. 1-a: "Do you find from a preponderance of the evidence that such act, if any (inquired about in Question No. 1), was negligence? Answer: No."

Question No. 2: "Do you find from a preponderance of the evidence that such act, if any (inquired about in Question No. 1), was a proximate cause of the accident and the damages resulting therefrom? Answer: Yes."

Question No. 26: "Do you find from a preponderance of the evidence that just prior to and at the time of the accident in question the driver of the Powell truck was acting under an emergency? Answer: Yes."

Question No. 27: "Do you find from a preponderance of the evidence that after the emergency, if any, arose, the driver of the Powell truck, did what an ordinary prudent person would have done under the same or similar circumstances? Answer: Yes."

Question No. 28: "Do you find from a preponderance of the evidence that the accident in question was not the result of an unavoidable accident? Answer: It was an unavoidable accident."

It is appellant's contention that it is entitled to judgment upon the jury's finding that the driver of the Powell truck had driven his vehicle upon his left-hand side of the highway, which was a violation of the penal code and hence negligence per se, and that such action was a proximate cause of the damages resulting from the collision.

It is apparently undisputed that the "driver of the Powell truck drove said truck to his left-hand side of the highway." (An operator attempting to control the movements of a motor vehicle which is defective in certain of its parts is commonly regarded as "driving" the vehicle despite a failure to exercise fully effective control. "To drive" means "to give a forward impetus to; to propel; impel." Shafer v. Glander, 153 Ohio St. 483, 92 N. E.2d 601, 604; Bosse v. Marye, 80 Cal.App. 109, 250 P. 693. "The person in control of the motive power of a motor vehicle is said to be 'driving' it." Grant v. Chicago, M. & St. P. Ry. Co., 78 Mont. 97, 252 P. 382, 385, citing Commonwealth v. Crowninshield, 187 Mass. 221, 72 N.E. 963, 68 L.R.A. 245.) Appellee argues that this driving on the left-hand side of the road in violation of the penal code was excusable in that its driver "attempted to make such application of his brakes as he could under the circumstances and otherwise attempted to control the movement of the vehicle," but was unable to do so through no negligence on his part because of a suddenly deflated tire. Appellant's contention counter to this is that there is no evidence, as distinguished from mere surmise and conjecture, raising the issue of excuse for the violation of a penal statute.

The Texas rule with reference to civilly excusable violations of the penal code seems in accord with the general American rule and is fairly clear, except perhaps as to the burden of proof in certain factual and procedural situations.

Questions involving excusable violations of the criminal law and the civil consequences resulting therefrom have been discussed in a number of comparatively recent law review articles. 46 Harvard Law Review 453, 25 Texas Law Review 424, and 27 Texas Law Review 866. Perhaps the best considered of these treatments is that of Clarence Morris, styled, "The Role of Criminal Statutes in Negligence Actions," contained in 49 Columbia Law Review 21, and Morris', "Studies in the Law of Torts," p. 141.

After pointing out that in certain instances the adoption of a penal statute may introduce new grounds of liability into the civil law, and that consequently the adoption of criminal legislation may result in something more than a substitution of another standard for that of the reasonably prudent man, Morris nevertheless points out that:

"In many instances * * * the substitution of the criminal proscription for the reasonably-prudent-man formula is the use of a more exact standard to accomplish with greater smoothness the results that the common law had always tried to reach. But even though the criminal proscription normally is a good test of negligence, if it is used inflexibly in all cases it may produce some untoward results. The doctrine of negligence per se purports to rob the judge of judicial functions. It places responsibilities on a legislature that could not possibly conceive of all cases to which its proscription might apply and that has not provided for civil liability, and that, therefore, surely has not considered proper limitations and excuses. At times violation of the criminal law is not unreasonable. If the doctrine of negligence per se is applied obdurately to reasonable violators their liability can be justified only on some basis other than fault—if at all."

Negligence implies fault and, "If liability is to be extended beyond fault, the phrase 'negligence per se' is, at least, a misnomer."

Morris makes the further observation that, "some defendants guilty of breaking the criminal law should not be civilly liable and some defendants technically entitled to acquittal in criminal prosecution should be held liable in civil suits. Since civil liability has not been dealt with by the legislature, judges cannot avoid the responsibility of deciding the problems peculiar to civil liability which may remain even after the statute has been properly interpreted."

A statute enforcible as a penal ordinance must not necessarily be given effect as fixing civil liability for, "If a constitutional statute, properly interpreted, enacts unwise criminal responsibility, the courts may be bound to convict in accordance with the statute. But when a damage suit judge refuses to rule that breach of a criminal statute is negligence * * * he is not disobeying the legislature's command, for the legislature has ordered criminal responsibility—not civil liability." Morris, p. 168.

Similarly, a penal provision for some reason ineffective as such may be taken as a standard for civil liability, if suitable for the purpose. Clinkscales v. Carver, 22 Cal.2d 72, 136 P.2d 777 (wherein a penal ordinance was held invalid as such because not properly published).

Undoubtedly the penal provision forbidding driving on the left-hand side of the road prescribes an appropriate standard for measuring civil liability, but this does not mean that it must be rigidly applied under any and all fact circumstances. We think the trial court was correct in so holding.

It will be noted that the trial court submitted two issues having reference to a claimed excuse for violating a penal statute in which the burden of proof was placed upon the appellant as plaintiff below. These were the issue of negligence, as determined by the reasonably prudent man standard (Question No. 1–a) and the "unavoidable accident" issue (Question No. 28). The court also submitted the theory of emergency by two questions, Nos. 26 and 27. On these issues the burden of proof was placed upon the appellee as defendant. This matter of the burden of proof is, of course, important in determining the validity of a

jury's answer as a matter of law as against a "no evidence" attack and the trial court's submission and placing of the burden of proof is seemingly supported by the Texas authorities.

As above indicated, the question of applying the provisions of a penal statute as a standard for determining civil liability is one for the decision of the civil court. Likewise, the matter of recognizing an excuse for violation of a penal article, once it has been adopted as a standard, presents a preliminary matter for the court. When a violation of a criminal statute (suitable for determining civil liability) is shown and nothing more, it is wholly unnecessary to submit the reasonably-prudent-man standard of negligence. The violator of the statute is guilty of negligence as a matter of law. Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; Shaver v. Mason, Tex.Civ.App., 13 S.W.2d 450; Ben E. Keith Co. v. Minor, Tex.Civ.App., 103 S.W.2d 241; Wright v. McCoy, Tex.Civ.App., 131 S.W.2d 52; Younger Bros. v. Marino, Tex.Civ.App., 198 S.W.2d 109; Jessee Produce Co. v. Ewing, Tex.Civ.App., 213 S.W.2d 750; Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248; Harbert v. Mathis, Tex.Civ.App., 230 S.W.2d 380.

It would logically follow that whenever evidence is submitted tending to show that the violation of the statute was excusable or justifiable or constituted at most a mere technical violation for which civil liability should not be imposed the trial court should submit the reasonably prudent man test in some form. In other words, if the evidence fairly raises the issue of excuse, then, in addition to the question of the commission of a criminal act an issue embodying the reasonably prudent man standard of negligence should be submitted. Hicks v. Morgan, Tex.Civ.App., 259 S.W. 263; Taber v. Smith, Tex.Civ.App., 26 S.W.2d 722; Safeway Stores v. Webb, Tex.Civ.App., 164 S.W.2d 868; Killen v. Stanford, Tex.Civ.App., 170 S.W.2d 792.

From a reading of the cases cited, the following rules may be deduced:

1. A violation of a penal statute which contains an appropriate standard for deter-

mining civil liability, constitutes negligence as a matter of law.

2. This rule is not inexorable. The party violating the statute may assume the burden of going forward with the evidence and raise an issue as to an excusable violation.

3. If said party bring forward sufficient evidence to raise the issue (and this is a preliminary matter for decision of the trial court), then the issue of negligence determined by the reasonably prudent man standard should be submitted.

4. The burden of proof upon this issue rests with the party asserting negligence, for upon him rests the burden of proof as distinguished from the burden of going forward with the evidence.

As to Issues Nos. 1–a (embodying the reasonably prudent man standard) and 26 (unavoidable accident), the question is, Did the appellee as defendant below bring forward evidence to raise these issues? As to unavoidable accident see, Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, where it is intimated that a non-negligent mechanical failure of a motor vehicle may raise the issue of unavoidable accident, Winn v. Taylor, Tex.Civ.App., 111 S.W.2d 1149, and Price v. Leon, Tex.Civ.App., 202 S.W.2d 309.

The question as to Issues Nos. 26 and 27, may be stated as whether or not there is *any* evidence supporting the jury's affirmative answers to these issues. These are the emergency issues and constitute defendant's affirmative submission of its defensive issues. Dixie Motor Coach Corporation v. Swanson, Tex.Civ.App., 41 S.W.2d 436; Anding v. Queener, Tex.Civ.App., 138 S.W. 2d 126; Dallas Ry. & Terminal Co. v. Young, Tex.Civ.App., 155 S.W.2d 414; Romo v. San Antonio Transit Co., Tex.Civ. App., 236 S.W.2d 205.

(We have discussed the applicable principles and rules of law and procedure from the standpoint of an excusable violation of a penal statute. It may well be that a criminal court upon accepting a factual basis similar to that advanced by appellee here would decide as a matter of statutory interpretation that no violation of the penal code

had taken place. If the element of criminal intent be lacking, it could be said that the Legislature did not propose to punish one who was guilty of no fault. Whatever view of the interpretation of the criminal statute be taken, it seems on principle that the burden of proving negligence, either that proscribed by statute or condemned by the common law, should remain throughout upon the party asserting the same. McCormick, Ray, Texas Law of Evidence, p. 39, § 28.)

In reviewing the evidence bearing upon the issues above set out, we are somewhat handicapped by the action of the parties acting under what we believe to be a misconception of Rule 377, subd. (d) of the Texas Rules of Civil Procedure. *By agreement of the parties* a carbon copy of the statement of facts, in parts almost illegible, has been "filed in lieu of the original." The rule does not relieve litigants of the duty placed upon them to file a satisfactory and readable record in this Court.

There is no dispute as to certain facts, but where the evidence is conflicting, or conflicting inferences may be drawn therefrom, we are required to view the evidence in the light most favorable to the appellee, the prevailing party below, as appellant is asserting that certain controlling findings of the jury are supported by "no evidence." We make the following statement with this rule in mind.

At the Burnell underpass, U. S. Highway No. 181 made an S curve and passed under the Southern Pacific Railway tracks. The approach to the underpass was reached by means of a spiral curve approaching forty-five degrees, and the grade of slope was 4.-47 feet per hundred feet. The pass was exceptionally hazardous and marked by numerous highway department signs, reading, "Slow", "Turn" and indicating a no passing zone.

The accident took place about 10 o'clock at night and the point of collision was to the north of the underpass, upon an approximate tangent. The Powell vehicle had negotiated the sharpest point of the curve and the collision occurred at a place where the highway straightened out for a short distance leading to the underpass proper. From the standpoint of the driver of the

898

Powell truck, the impact of the vehicles occurred on the left-hand portion of the highway.

Immediately after notification, Sheriff Vail Ennis of Bee County came to the scene of the accident and made a prompt and efficient investigation thereof. Ennis is an expert photographer and took numerous pictures of the wreck and the physical surroundings thereof. These photographs constitute the most important items of evidence in the case. Some of them, including plaintiff's Exhibits Nos. 1 and 4, were enlarged to 19 inches by 15 inches in size. Said photographic exhibits mentioned by number are here reproduced.

Plaintiff's Exhibit No. 1

Plaintiff's Exhibit No. 4

In taking the photograph designated as Exhibit No. 1, the camera was pointed north. This exhibit shows the underpass, the rear of the Phoenix tank truck, and the overturned Powell truck with which it collided. Far to the right is seen one of the heat treaters or separators' which constituted the freight of the Powell truck. The photograph designated as Exhibit No. 4 is taken from the opposite direction with the camera pointing south. This photograph is the primary basis for appellee's contention that the issue of excuse for violation of the penal code was raised by the evidence.

It is appellee's theory that the presence of its truck upon the left-hand side of the highway was not due to the fault of the driver, but, rather, to a mechanical failure over

which he had no control, to-wit, a blowout or sudden deflation of the left front tire of the Powell truck.

The evidence relied upon to support appellee's contention is as follows:

Herbert Powell, a member of the appellee partnership, testified Redick was about forty-six years of age and had worked for appellee for about sixteen months as a road driver and three months as a local driver. During that time he had been involved in no accidents or collisions. Redick possessed a commercial chauffeur's license and was not known to drink alcoholic beverages on the job. The witness considered him to possess a "little above average skill as a driver." The truck was carefully checked to make sure it was in first-class mechanical condition before Redick took it on the trip from Tulsa, Oklahoma, to Corpus Christi, Texas. It was a tractor-trailer outfit. The tractor had single wheels on the front and dual wheels on the rear. The tires were all in good shape when the truck left Tulsa.

Appellee's witness Charles E. Graves testified that on the day of the accident, he talked about thirty minutes to Redick at Seguin, Texas, which was located about 80 miles from the Burnell underpass. This conversation took place shortly before dark. It appears that Redick was not familiar with the roads into Corpus Christi, and this matter was discussed. The witness said that Redick did not appear sleepy or tired; his breath did not smell of liquor or alcohol, and he seemed to be alert and in possession of all his faculties.

O. D. Davis, a witness for appellee, testified that he lived in Pettus but on the evening of October 25, 1951, he and his family went to Kenedy to a prayer meeting. They stopped at a place along the highway for refreshments at a little place in Kenedy and Davis noticed a truck loaded with heat-treaters (the Powell truck) pass by. The truck was travelling about fifteen miles an hour. Davis said that he passed this truck about six miles out of Kenedy and two or three miles north of the Burnell underpass. He noticed that the truck's lights were dimmed when meeting north-bound cars. He, Davis, signalled the truck driver and

received an answering signal before he passed the vehicle. While he was following the truck he was travelling about forty miles an hour, but slowed down a little when he got close to it. After passing he traveled at a rate of about fifty to fifty-five miles an hour and met no motor vehicles until after he had reached the County Line Road, some two miles south of the underpass, where he met an H. E. B. Grocery Company truck. It appears that the Phoenix truck entered upon U. S. Highway No. 181 from the County Line Road somewhat ahead of the H. E. B. truck and proceeded in a northerly direction toward Kenedy.

Photographs of the wreck show that the Powell truck turned over. The physical position and condition of the vehicles indicate that the right side of the Powell truck struck the left side of the Phoenix vehicle, indicating that the Powell truck had overturned immediately before or at some time prior to the collision.

This brings us to a detailed consideration of Exhibit No. 4. This photograph plainly shows two distinct tire marks upon the Powell left-hand portion of the pavement. It is conceded that these were made by front wheels of the Powell truck. A witness, W. W. Brown, Jr., testified that he had seen these marks upon the pavement and that they were comparatively short—not over forty or fifty feet in length. The exhibit shows that the mark made by the left tire is about twice as wide as that made by the right tire. The white spot near the end of the left tire mark (near the foot of the highway patrolman) was identified by several witnesses as a rim cut and it may be inferred that at this point the Powell truck commenced its overturn.

Appellee relies heavily upon the testimony of Captain F. M. Williams, a traffic and photographic expert. This witness had had extensive experience with the Pennsylvania Motor Police and the California Highway Patrol. He had perfected a speed analyzer camera and a deceleograph, a device for measuring motor vehicle stopping distances and the reaction time of drivers. He had also conducted over a thousand traffic tests in perfecting these devices and

personally investigated over 500 automobile collisions. Williams testified in some detail as to the construction of a nine inch truck tire. Instead of four plys of fabric, as in the case of the ordinary automobile tire, a truck tire has twelve layers of fabric and is much heavier in every particular of construction. By reason of this fact, and the means whereby it is affixed and held in place on the rim of the wheel, a nine inch truck tire would hot make a wavy mark upon the pavement, such as a deflated automobile tire would ordinarily make, but, on the contrary, would make a relatively straight mark, such as was shown by the mark of the left tire of the Powell truck.

The witness made a technical distinction between the marks on the pavement made by the right and left front wheels of the Powell truck. The right mark or track he characterized as an adhesion mark, while the left was referred to by him as a skid mark; the distinction between the two being that the adhesion mark was made by a wheel which was still turning to some extent, while the skid mark was made by a wheel which was locked in position by brake action and hence not turning. The difference between the two types of marks may generally be ascertained by the different amounts of rubber particles deposited upon the pavement. The width of the two marks was measured by the simple device of ascertaining the width of the pavement and calculating the proportionate part thereof covered by the tire marks. According to Williams' calculations, the width of the right mark was slightly less than five inches, while the width of the left mark was 9.8 inches. It is undisputed that the front wheels of the Powell truck were nine inches in diameter. According to Williams, a nine-inch tire normally carried eighty to ninety pounds pressure and when thus inflated makes a road contact of about five by twelve inches or approximately sixty square inches. From the width of the left track he inferred that the left tire was deflated and in that condition presented a road contact of about ten by twenty-four inches or 124 square inches. (Appellee contends that the theory of a deflated left front tire is further sup-

ported by the photograph designated as plaintiff's exhibit No. 1, which shows the left front tire of the overturned Powell truck burning much faster than the right tire, although it was the last tire to catch fire. It is argued that this shows the tire had been damaged and had disintegrated somewhat before it commenced burning.) From the fact that the right wheel was still turning some, as evidenced by the right "adhesion" mark, Williams concluded that Redick had not put his brakes on at full force, but, nevertheless, the braking was sufficient to cause the left deflated tire to skid. The natural tendency of a motor vehicle with a flat front tire is to swerve around upon the flat tire, that is, the tendency of a vehicle with a flat left tire is for it to pull to the left. This tendency was accentuated by the fact that the truck had come around a right-hand curve approaching the underpass. Williams testified that the reaction time of the average automobile driver was about three-fourths of a second. This was explained as the period elapsing from the time something happened until the time the driver could react thereto by putting on the brake or taking other appropriate action. A vehicle at twenty-five miles per hour would travel about twenty-seven feet during this reaction time.

From the evidence above set forth in a highly abbreviated form as compared with the statement of facts, it is argued that:

1. It was shown that over a period of some nineteen months Redick was a careful driver and had been involved in no accident.

2. The time (from dusk to about 10 p. m.) taken by Redick to travel the eighty miles from Seguin to the underpass indicates that Redick had not been driving at an excessive rate of speed.

3. According to the last person to observe the Powell truck before the collision, Redick was driving at a prudent and careful rate of speed.

4. The left front tire of the Powell truck blew out or became deflated shortly prior to the collision. This is demonstrated by the wide mark of the left front tire which was some forty to fifty feet in length and terminated in a chipped place in the

pavement made by the left rim when the truck started to turn over.

5. The absence of tire tracks upon the right-hand side of the road is explained by the "reaction time" of the driver of the Powell truck.

6. It is reasonable to conclude that while Redick was driving on his right-hand side of the highway, a sudden deflation or blow-out of the left-hand tire occurred; that this, while not immediately marking the pavement, caused the truck to swerve suddenly to the left; that by the time Redick could react and apply the brakes, which caused the tires to leave marks upon the pavement, the vehicle had passed over to the left, and Redick through no fault of his own was unable to control the truck which overturned in the path of the oncoming Phoenix vehicle.

▆▆▆ After careful consideration, we have concluded that the evidence was sufficient to raise the issue of excusable violation of the statute prohibiting the driving of a motor vehicle on the left-hand side of the road. Appellee's evidence, although contradicted in certain of its testimonial parts as well as to the inferences and conclusions to be drawn therefrom, nevertheless, presents a matter for jury determination. It does not violate the rule against basing "one inference upon another." This form of statement is often employed by the courts, and has been used by this writer, as and for a shorthand rendition of the rule which requires that verdicts be based upon more than surmise and guesswork. The rule can not be literally applied in all factual circumstances. This has been pointed out by Dean Wigmore in his monumental work on Evidence, and we quote therefrom:

"It was once suggested that an 'inference upon an inference' will not be permitted, i. e. that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several Courts, and sometimes actually enforced.

"There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon." 1 Wigmore on Evidence (3d Ed.), p. 434, § 41. The notes to the section quoted contain citations to a number of cases upon the point. See also, 20 Am.Jur. 169, Evidence, § 165.

▆▆▆ Further, we believe that the testimony of appellee's expert Williams does not exceed the proper limitations of opinion testimony. It can not be properly regarded as "no evidence." Ft. Worth & Denver City R. Co. v. Thompson, 75 Tex. 501, 12 S.W. 742; Missouri, Kansas & Texas R. Co. of Texas v. Sherman, Tex.Civ.App., 53 S.W. 386; Gulf, C. & S. F. R. Co. v. Downs, Tex.Civ.App., 70 S.W.2d 318, wr. ref.; Ft. Worth & Denver City R. Co. v. Burton, Tex.Civ.App., 158 S.W.2d 601; Ragan v. MacGill, 134 Or. 408, 292 P. 1094, 72 A.L.R. 860. Annotation, "Opinion Evidence as to condition of automobile or other motor vehicle." 77 A.L.R. 559, 5 Am.Jur. 862, Automobiles, § 653.

▆▆▆ The issue being raised, the jury findings that appellant had not met the burden of persuasion properly placed upon it by Issues No. 1-a (negligence) and 28 (unavoidable accident) must stand and this is

fatal to the appeal. Selman v. Midwest Haulers, 309 Ill.App. 154, 33 N.E.2d 140; Hobson v. Turner, 299 Ky. 342, 185 S.W.2d 550; Otto v. Sellnow, 233 Minn. 215, 46 N.W.2d 641, 24 A.L.R.2d 152; Kelly v. Gagnon, 121 Neb. 113, 236 N.W. 160; Ingle v. Cassady, 208 N.C. 497, 181 S.E. 562; Virginia State Fair Ass'n v. Burton, 182 Va. 365, 28 S.E.2d 716; Eubanks v. Kielsmeier, 171 Wash. 484, 18 P.2d 48; Wellons v. Wiley, 24 Wash.2d 543, 166 P.2d 852; Seligman v. Orth, 205 Wis. 199, 236 N.W. 115.

It appearing that appellant as plaintiff failed to secure findings upon issues which were necessary to fix liability against the defendant, we need not discuss with particularity the evidence relating to appellee's affirmatively submitted issues based upon the theory of "emergency."

The judgment is affirmed.

W. O. MURRAY, Chief Justice.

I do not concur in the opinion of the majority. The jury found, in answer to Question No. 1, that the driver of the Powell truck *drove* said truck to his left side of the highway as he approached the point of the accident in question, and in answer to Question No. 2, found that such act was a proximate cause of the accident and damages resulting therefrom. There was no doubt about the Powell truck being upon the left side of the highway at the time of the collision, but the question to be decided by the jury was, how did it get on the left side of the highway? The jury answered that it got there by its driver driving it there. This finding precludes the idea that it was thrown or pulled to the left side. The collision occurred at a point on the highway where it was unlawful to drive upon the left side of the road at all, it being in an underpass, in a no-passing zone, and upon a curve. Art. 6701d, §§ 52, 57a and 58, Vernon's Ann.Civ.Stats.

Appellees' theory was that a blow-out occurred to the tire on the left front wheel of the Powell truck, thus throwing or pulling the Powell truck to the left side of the highway. This is not a plea of justification in driving on the left side of the highway, but a plea that the driver of the Powell truck did not drive the truck to the left side of the highway. The jury decided this contention against appellees, when it found that the driver of the Powell truck *drove* it to the left side of the highway. One might be justified in driving to the left side of the road to avoid an obstruction in the highway, but if he is thrown to the left side he has not driven there.

The jury having found that the driver of the Powell truck drove to the left-hand side of the highway and that such act was a proximate cause of the collision, the jury's further finding that the driver's act of driving the Powell truck to the left side of the highway was not negligence, is immaterial, as such conduct was in violation of the penal code and negligence per se. Art. 6701d, §§ 57a and 58, supra; Arts. 801(A) and 801(B), Vernon's Texas Penal Code; Texas Co. v. Betterton, 126 Tex. 359, 88 S.W.2d 1039; 5 Tex.Jur. 714; Shaver v. Mason, Tex.Civ.App., 13 S.W.2d 450; Harbert v. Mathis, Tex.Civ.App., 230 S.W.2d 380; Wright v. McCoy, Tex.Civ.App., 131 S.W. 2d 52; Jessee Produce Co. v. Ewing, Tex. Civ.App., 213 S.W.2d 750; Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248.

The trial court in rendering the judgment which he did, impliedly found that the Powell truck was on its right side of the road at the time the blow-out occurred and was thus thrown or pulled to the left side. In my opinion there is no evidence to sustain such a finding, and if there were, such finding is in conflict with the jury's finding that the Powell truck was driven to the left side of the road. In any event, from the evidence in this case it is just as reasonable to suppose that the Powell truck was on the left side of the highway at the time the blow-out occurred as to suppose that it was on the right side.

I respectfully dissent from the opinion of the majority.